Docket No. 100925.

**IN THE
SUPREME COURT
OF
THE STATE OF ILLINOIS**

DONNA M. KINKEL, Appellee, v. CINGULAR WIRELESS LLC,
Appellant.

*Opinion filed October 5, 2006.*

JUSTICE GARMAN delivered the judgment of the court,
with opinion.

Justices Freeman, Fitzgerald, Kilbride, and Karmeier
concurred in the judgment and opinion.

Chief Justice Thomas and Justice Burke took no part in the
decision.

**OPINION**

Defendant, Cingular Wireless, LLC (Cingular), provides cellular telephone service to consumers. Under Cingular's standard service agreement, its customers commit to a specified "service term" and agree to pay an early-termination fee if they withdraw from the service agreement before the end of the term. Plaintiff, Donna M. Kinkel, individually and on behalf of a class of those similarly situated, filed suit against Cingular in the circuit court of Madison County, alleging that the early-termination fee constitutes an illegal penalty and that imposition of the fee is both a breach of the service agreement and statutory fraud under the Illinois Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2002)).

Cingular filed a motion to compel arbitration of plaintiff's individual claim, in accordance with the mandatory arbitration provision of the standard service agreement, which provides that "no arbitrator has the authority" to resolve class claims. The circuit court, after a hearing, denied the motion. Interlocutory appeal was taken by Cingular pursuant to Supreme Court Rule 307(a)(1) (188 Ill. 2d R. 307(a)(1)). The appellate court reversed and remanded, finding that although the arbitration clause is enforceable, the limitation on class arbitration contained therein is unconscionable and, thus, unenforceable. 357 Ill. App. 3d 556. This court granted Cingular's petition for leave to appeal pursuant to Supreme Court Rule 315 (177 Ill. 2d R. 315), to determine whether the prohibition of class arbitration is unconscionable.

## BACKGROUND

In July 2001, plaintiff entered into a two-year service agreement with Cingular for cellular telephone service by signing defendant's standard service agreement. The "TERMS AND CONDITIONS" of the agreement appear on the back of the form that plaintiff signed. These terms and conditions are spelled out on a single, legal-size sheet of paper in small type. Certain provisions are emphasized by the use of capital letters. Topics or headings appear in boldface type.

Plaintiff cancelled her cellular telephone service in April 2002, although the two-year term was not scheduled to expire until July 2003. Pursuant to the early-termination provision in the service agreement, Cingular charged her an early-termination fee of $150, which she paid under protest.

In August 2002, plaintiff filed suit. Cingular filed a motion to compel arbitration of her individual claim and stay the litigation, invoking the arbitration clause of the service agreement and sections 2 and 3 of the Federal Arbitration Act (FAA) (9 U.S.C. §§2, 3 (2000)). In September 2003, plaintiff filed her first amended complaint, again alleging that the $150 early termination fee is an illegal penalty. She further alleged that the ban on class treatment contained in the mandatory arbitration provision is intended by Cingular to further an unlawful scheme to collect an illegal penalty from her and other members of the class she purports to represent and that it prevents her and others from "effectively vindicating their statutory and common law causes of action and facilitates rather than remedies Cingular's fraudulent and unlawful conduct." (Because provisions barring class treatment in arbitration are generally referred to in the case law and the literature as "class action waivers," we will use the term "waiver," even though the provision at issue is phrased as a limitation on the scope of the arbitrator's authority, rather than as a waiver by the customer of her ability to file a claim on behalf of a class.)

After a hearing, the trial court denied Cingular's motion to compel arbitration finding, *inter alia*, that the arbitration clause was unenforceable on the basis of unconscionability. Interlocutory appeal was taken by Cingular.

The appellate court concluded that the class action waiver was unconscionable, but that it was severable from the remainder of the arbitration clause, which, in keeping with "the strong policy in favor of enforcing arbitration agreements," should be enforced. 357 Ill. App. 3d at 569. The appellate court remanded for further proceedings consistent with its opinion, noting that the effect of its ruling would be to stay plaintiff's lawsuit while her class claim proceeded to arbitration. 357 Ill. App. 3d at 569.

Relevant Provisions of the Service Agreement

The second sentence of the standard service agreement states that service is "subject to CINGULAR's standard business policies, practices and procedures that CINGULAR may change at any time without notice." The fourth sentence states:

> "IMPORTANT NOTICE: THIS AGREEMENT CONTAINS MANDATORY ARBITRATION AND OTHER IMPORTANT PROVISIONS LIMITING THE REMEDIES AVAILABLE TO YOU IN THE EVENT OF A DISPUTE. PLEASE REFER TO THE SECTION ENTITLED 'ARBITRATION' FOR DETAILS."

The provision that is the subject of plaintiff's claim provides:

> "**SERVICE COMMITMENT** You have agreed to maintain service for a minimum term, the Service Commitment specified on the signature portion of this Agreement. The Service Commitment begins on the day your service is activated. If you have contracted for a Service Commitment greater than a month, in exchange you have received certain benefits from CINGULAR. You understand and agree that you now have certain contractual obligations and that CINGULAR's damages arising out of a breach thereof will be difficult, if not impossible, to determine. Therefore, if you terminate your service for any reason other than a change of terms, conditions, or rates as set forth below, or if CINGULAR terminates your service for nonpayment or other default before the end of the Service Commitment, you hereby agree to pay CINGULAR, as liquidated damages, and not as a penalty, in addition to all other amounts owed, the termination charge of $150 per wireless phone on the account ('Termination Fee')."

The arbitration clause provides, in pertinent part:

> "**INDEPENDENT ARBITRATION** Please read this paragraph carefully. It affects rights that you may otherwise have. (a) CINGULAR and you shall use our best efforts to settle any dispute or claim arising from or relating to this Agreement. To accomplish this,

CINGULAR and you agree to arbitrate any and all disputes and claims (including but not limited to claims based on or arising from an alleged tort) arising out of or relating to this Agreement, or to any prior Agreement for products or services between you and CINGULAR ***. The arbitration of any dispute or claim shall be conducted in accordance with the wireless industry arbitration rules ('WIA Rules') as modified by this agreement and as administered by the American Arbitration Association ('AAA'). The WIA Rules and fee information are available from CINGULAR or the AAA upon request. CINGULAR and you acknowledge that this agreement evidences a transaction in interstate commerce and that the United States Arbitration Act and Federal Arbitration Law shall govern the interpretation and enforcement of, and proceedings pursuant to, this or a prior agreement. *** Except where prohibited by law, CINGULAR and you agree that no arbitrator has the authority to: (1) award relief in excess of what this agreement provides; (2) award punitive damages or any other damages not measured by the prevailing party's actual damages; or (3) order consolidation or class arbitration. The Arbitrator(s) must give effect to the limitations on CINGULAR's liability as set forth in this agreement, any applicable tariff, law, or regulation. *** You agree that CINGULAR and you each is waiving its respective right to a trial by jury. You acknowledge that arbitration is final and binding and subject to only very limited review by a court. If for some reason this arbitration clause is at some point deemed inapplicable or invalid, You and CINGLUAR agree to waive, to the fullest extent allowed by law, any trial by jury. *** Notwithstanding any of the foregoing, either party may bring an action in small claims court."

Defendant's brief states that the service agreement also provides that "all fees and expenses of the arbitration shall be equally borne by [the customer] and CINGULAR." Repeated reading of the fine print of the "TERMS AND CONDITIONS" page, however, has failed to reveal the existence of this

˘5˘

provision. The only provision relating to the cost of arbitration incorporates the WIA Rules by reference and informs the customer that fee information is available from Cingular or the AAA "upon request."

Under the WIA Rules promulgated by the AAA, a claimant must pay a fee at the time he or she files a claim. If, as in the present case, the claim does not exceed $10,000, the claimant must pay one-half of the arbitrator's fees, up to a maximum of $125. Any funds not used are refunded to the claimant. For claims under $10,000, the business pays all fees that are not the responsibility of the claimant. Wireless Industry Arbitration Rules of the American Arbitration Association, Supplementary Procedures for Consumer-Related Disputes (eff. March 1, 2002), available at http://www.adr.org/sp.asp?id=22014#CONC-8 (hereinafter WIA Rules).

While this matter was still before the trial court, Cingular offered to reimburse plaintiff for her reasonable attorney fees and costs if her claim were to proceed to arbitration and the arbitrator were to award her an amount equal to or greater than her $150 claim. In response to a question by the trial court, Cingular's counsel represented that Cingular would apply the terms of the new arbitration provision to all customers, current and former, including plaintiff and members of the purported class.

In July 2003, Cingular revised the arbitration provision in its standard service agreement, notifying all then-current customers of the change by mail and posting the new terms on its website. Under the new provision, Cingular agrees to pay "all AAA filing, administration and arbitrator fees," unless the claim filed or the relief sought is so improper as to be subject to sanctions under Federal Rule of Civil Procedure 11(b) (Fed. R. Civ. P. 11(b)). If a claimant recovers the amount of his demand or more, Cingular agrees to reimburse him for his reasonable attorney fees and expenses incurred in bringing the claim to arbitration. The location of arbitration has been changed to the county of the claimant's billing address, rather than the city in which Cingular's switching office is located. Unlike the earlier provision, the new arbitration provision does not include a

confidentiality requirement and does not limit the remedies that an arbitrator may award, so that the possibility exists for an award of punitive damages. In addition, the new arbitration provision states:

> "You and CINGULAR agree that YOU AND CINGULAR MAY BRING CLAIMS AGAINST THE OTHER ONLY IN YOUR OR ITS INDIVIDUAL CAPACITY, and not as a plaintiff or class representative or class member in any purported class or representative proceeding. Further, you agree that the arbitrator may not consolidate proceedings or more than one person's claims, and may not otherwise preside over any form of a representative or class proceeding, and that if this specific proviso is found to be unenforceable, then the entirety of this arbitration clause shall be null and void."

The trial court rejected Cingular's argument that this new provision should be applied to plaintiff's claim. The appellate court agreed with the trial court's ruling, concluding that "giving Cingular the benefit of a piecemeal reworking of the contract that was in effect when the plaintiff cancelled her service would not meet the ends of justice." 357 Ill. App. 3d at 568, citing *Spinetti v. Service Corp. International*, 324 F.3d 212, 217 n.2 (3d Cir. 2003) (concluding that " 'reviewing courts should not consider after-the-fact offers' " to pay a plaintiff's share of arbitration costs " 'where the agreement itself provides that the plaintiff is liable, at least potentially, for arbitration fees and costs' "), quoting *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 676 (6th Cir. 2003).

## ANALYSIS

### Subsequent Revision of Service Agreement

As a threshold matter, we address Cingular's argument that the terms of its current standard service agreement should be applied to plaintiff's claim, notwithstanding her lack of consent to be bound by such terms. At this stage of our analysis, we need not be concerned with the strong federal policy favoring arbitration, as we are not yet considering whether an arbitration clause is enforceable. The question at this stage is which of the

two arbitration provisions–the one printed on the back of the form plaintiff signed in 2001, or the one adopted by Cingular in 2003–should be the subject of the court's inquiry.

Neither party has suggested the proper standard of review. Because the question is, in essence, one of contract modification, we look to the law of contracts. Where the evidence is in conflict, whether an existing contract has been modified is a question of fact. 12A Ill. L. & Prac. §347, at 199 (1983). However, where the evidence is undisputed, it is for the court to decide whether a modification has been effected. 12A Ill. L. & Prac. §347, Comment, at 199 (1983). The evidence in the present case is undisputed. We, therefore, review *de novo* the question of the applicability of the revised arbitration provision to plaintiff's claim.

Cingular devoted a significant portion of its brief and oral argument to its offer to bear the full cost of arbitration and to reimburse plaintiff for her attorney fees if she were to prevail in arbitration. Cingular asserts that the appellate court erred by refusing to focus on its revised arbitration clause, which it characterizes as a "consumer-friendly" provision that waives the earlier cost-sharing requirement. Cingular cites *Ellman v. Ianni*, 21 Ill. App. 2d 353, 361 (1959), for the proposition that "a condition or provision of the contract may, generally, be waived by the party thereto who is entitled to receive the benefit of the condition."

In addition, Cingular argues that "offers to pay the costs of arbitration should be credited when considering whether an arbitration provision is enforceable," citing *Livingston v. Associates Finance, Inc.*, 339 F.3d 553, 557 (7th Cir. 2003). In *Livingston*, the court of appeals found that a provision in the arbitration agreement, under which the company offered to pay arbitration fees if the customer was financially incapable of paying, was sufficient to protect the customer from potentially prohibitive costs. Thus, the court concluded, the "bare assertion of prohibitive costs, without more, is too speculative and insufficient to shift the burden" to the company to show that the costs of arbitration are not prohibitive. *Livingston* is readily distinguishable from the present case because the defendant's offer to pay the costs of arbitration was part of the

initial agreement that the customer signed. In the present case, the offer was not made until after the customer filed a lawsuit.

Cingular has also been permitted to file supplemental authority in support of its claim that the revised service agreement should be applied to plaintiff's claim. In *Kristian v. Comcast Corp.*, 446 F.3d 25 (1st Cir. 2006), the court of appeals held an arbitration provision added to the defendant's standard service agreement in 2002-03 applied retroactively to the plaintiffs' claims that arose during the period 1987-2001. When the plaintiffs first subscribed for cable services from Comcast, their service agreements did not contain arbitration provisions. It appears, however, that all four plaintiffs continued to subscribe to Comcast services after the arbitration provision was added to the standard service agreement and were, therefore, subject to the revised terms. *Kristian*, 446 F.3d at 30. *Kristian* is distinguishable on this basis. Plaintiff was not a Cingular customer on or after the date upon which Cingular amended its service agreement.

Plaintiff responds that Cingular "should not be allowed to make unilateral *post facto* amendments to its contract to improve its litigation position in this case," and distinguishes *Ellman* based on the difference between a party's waiving a term of the original contract and changing the terms of that contract. We agree that the offer made by Cingular to plaintiff is not a mere waiver of a contractual right (the right to have plaintiff pay a portion of the cost of arbitration), but is a substantial modification of the parties' contract, including an affirmative promise to pay plaintiff's attorney fees and costs if she were to prevail in arbitration, as well as other new terms.

Plaintiffs also rely on *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 676 (6th Cir. 2003), in which the court of appeals rejected the defendant-employer's argument that the plaintiff-employee should be compelled to arbitrate his discrimination claim because it had agreed, in writing, to pay his share of the arbitration fee.

> "In considering the ability of plaintiffs to pay arbitration costs under an arbitration agreement, reviewing courts should not consider after-the-fact offers by employers to pay the plaintiff's share of arbitration costs where the

agreement itself provides that the plaintiff is liable, at least potentially, for arbitration fees and costs." *Morrison*, 317 F.3d at 676.

Cingular responds that, unlike the defendant in *Morrison*, it has changed its standard service agreement so that all customers, not just this plaintiff, will be spared the costs of arbitration if they have meritorious claims. Thus, Cingular claims, any claim by plaintiff or any current or former customer that its arbitration provision is unconscionable on the basis of the prohibitive cost of arbitration is moot.

We conclude, for two reasons, that the original arbitration clause should be the focus of the unconscionability analysis. First, we agree with the reasoning of *Morrison* and *Spinetti* that a defendant's after-the-fact offer to pay the costs of arbitration should not be allowed to preclude consideration of whether the original arbitration clause is unconscionable. As the *Morrison* court noted, the party who drafted the provision "is saddled with the consequences of the provision *as drafted*." (Emphasis in original.) *Morrison*, 317 F.3d at 677. We find this reasoning equally applicable whether the defendant alters its arbitration clause with respect to all current contracts, or makes a private, individual offer to the plaintiff in a particular case.

Second, this result is consistent with the law of contracts regarding modification. In the service agreement signed by plaintiff, Cingular expressly reserved the right to unilaterally modify the terms and conditions of the agreement, at any time, without notice. Plaintiff accepted this condition. Plaintiff terminated her contractual relationship with Cingular in April 2002, when, in full compliance with the then-existing agreement, she cancelled her cellular telephone service and paid the early-termination fee. Cingular subsequently modified the arbitration provision of its standard service agreement. When Cingular revised the arbitration provision, however, the contract between Cingular and plaintiff was no longer in effect. Cingular did not have the right to unilaterally modify the terms of a contract that had been terminated many months prior to the attempted modification. Plaintiff could certainly have accepted Cingular's offer to extend the new terms to her, but Cingular cannot compel her to do so.

In response to Cingular's argument that the strong federal interest in enforcement of arbitration agreements weighs in favor of applying its new arbitration provision to plaintiff's claim, we note that, in deciding whether to give effect to an attempted contract modification, the analysis does not depend on the nature of the contractual provision at issue. One party to a contract may not unilaterally modify a contract term–whether it is an arbitration clause, a disclaimer of incidental and consequential damages, a liquidated damages clause, or any other term–after the contractual relationship between the parties has ended and the original contract is the subject of a dispute. Defendant's revision of the arbitration provision in existing service agreements is, therefore, irrelevant to the instant case because this new provision was never a part of the contract between the parties.

Federal Preemption

Having concluded that the contract provision at issue in the present case is the arbitration clause printed on the back of the form plaintiff signed, we turn to Cingular's federal preemption arguments. If plaintiff's claim is preempted by federal law, we need go no further in our analysis of the class action waiver. Cingular argues that any holding that would not give effect to its arbitration provision and the class action waiver therein is expressly and impliedly preempted by federal law. Whether state law is preempted by a federal statute is a question of law, subject to *de novo* review. *Schultz v. Northeast Illinois Regional Commuter R.R. Corp.*, 201 Ill. 2d 260, 288 (2002).

Cingular's express-preemption argument is based on section 2 of the FAA, which provides that a written agreement in a "contract evidencing a transaction involving commerce" to arbitrate a controversy arising out of such a contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. §2 (2000). In *Perry v. Thomas*, 482 U.S. 483, 491, 96 L. Ed. 2d 426, 436, 107 S. Ct. 2520, 2526 (1987), the Supreme Court held that section 2 of the FAA expressly preempted a California statute that provided a judicial forum for actions for the collection of wages " 'without regard to the existence of any

private agreement to arbitrate.' " *Perry*, 482 U.S. at 484, 96 L. Ed. 2d at 432, 107 S. Ct. at 2523, quoting Cal. Lab. Code §229 (West 1971). The Court noted that section 2 " 'is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary.' " *Perry*, 482 U.S. at 489, 96 L. Ed. 2d at 435, 107 S. Ct. at 2525, quoting *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24, 74 L. Ed. 2d 765, 785, 103 S. Ct. 927, 941 (1983). By enacting section 2, " 'Congress declared a national policy favoring arbitration and withdrew the power of the states to require a judicial forum for the resolution of claims which the contracting parties agreed to resolve by arbitration.' " *Perry*, 482 U.S. at 489, 96 L. Ed. 2d at 435, 107 S. Ct. at 2525, quoting *Southland Corp. v. Keating*, 465 U.S. 1, 10, 79 L. Ed. 2d 1, 12, 104 S. Ct. 852, 858 (1984). Section 2 "embodies a clear federal policy of requiring arbitration unless the agreement to arbitrate is not part of a contract evidencing interstate commerce," in which case section 2 would simply not apply, or the contract "is revocable 'upon such grounds as exist' " under state law for the revocation of the contract. *Perry*, 482 U.S. at 489, 96 L. Ed. 2d at 435, 107 S. Ct. at 2525. The Court concluded: " 'We see nothing in the Act indicating that the broad principle of enforceability is subject to any additional limitations under state law.' " *Perry*, 482 U.S. at 489-90, 96 L. Ed. 2d at 435, 107 S. Ct. at 2525, quoting *Keating*, 465 U.S. at 11, 79 L. Ed. 2d at 12, 104 S. Ct. at 858.

Cingular acknowledges that section 2, as construed in *Perry*, expressly permits the invalidation of an arbitration agreement on state law grounds such as unconscionability. Cingular argues, however, that the "any contract" language in section 2 of the FAA expressly preempts a state court from holding that a class action waiver in an arbitration clause is unconscionable if that same waiver would not be deemed unconscionable in a contract without an arbitration clause. Cingular relies on *dicta* contained in a footnote to the *Perry* decision. *Perry,* 482 U.S. at 492 n.9, 96 L. Ed. 2d at 437 n.9, 107 S. Ct. at 2527 n.9. The Court declined to address the plaintiff's claim that the arbitration agreement in his

employment contract was unconscionable as a contract of adhesion and explained that this question could be considered by the state court on remand. The Court went on to explain, however, that:

> "[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally. A state-law principle that takes its meaning precisely from the fact that a contract to arbitrate is at issue does not comport with this requirement of §2. [Citations.] A court may not, then, in assessing the rights of litigants to enforce an arbitration agreement, construe that agreement in a manner different from that in which it otherwise construes nonarbitration agreements under state law. Nor may a court rely on the uniqueness of an agreement to arbitrate as a basis for a state-law holding that enforcement would be unconscionable, for this would enable the court to effect what we hold today the state legislature cannot." (Emphasis in original.) *Perry*, 482 U.S. at 492 n.9, 96 L. Ed. 2d at 437 n.9, 107 S. Ct. at 2527 n.9.

In *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 683, 134 L. Ed. 2d 902, 906, 116 S. Ct. 1652, 1654 (1996), the Supreme Court held that a Montana statute applicable to arbitration clauses, but not to contracts in general, conflicted with the FAA and was, therefore, preempted. The challenged statute provided that an arbitration clause was unenforceable unless it was printed on the first page of the contract in underlined capital letters. After summarizing its previous decisions in *Perry*, *Southland*, and other cases, the Court restated what these prior decisions had established:

> " 'States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of *any* contract." [Citation.] What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause. The Act makes any such

state policy unlawful, for that kind of policy would place arbitration clauses on an unequal "footing," directly contrary to the Act's language and Congress's intent.' " (Emphasis added.) *Casarotto*, 517 U.S. at 686, 134 L. Ed. 2d at 908, 116 S. Ct. at 1655, quoting *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 281, 130 L. Ed. 2d 753, 769, 115 S. Ct. 834, 843 (1995).

The authorities relied upon by Cingular stand for the proposition that under federal law, a class action waiver cannot be found unconscionable on grounds that apply only to arbitration clauses. We agree with Cingular that such a finding is expressly preempted by the FAA. Plaintiff, however, does not argue that the class action waiver is unconscionable solely because it is contained in an arbitration clause. Her claim, therefore, is not expressly preempted by federal law.

Cingular also argues that a finding that its class action waiver is unconscionable is impliedly preempted under the supremacy clause of the United States Constitution (U.S. Const., art. VI, cl. 2). There are two types of implied preemption, described as "field preemption" and "conflict preemption." *English v. General Electric Co.*, 496 U.S. 72, 78-79, 110 L. Ed. 2d 65, 74, 110 S. Ct. 2270, 2275 (1990). Conflict preemption occurs when it is either "impossible for a private party to comply with both state and federal requirements," or "where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *English*, 496 U.S. at 79, 110 L. Ed. 2d at 74, 110 S. Ct. at 2275, quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 85 L. Ed. 581, 587, 61 S. Ct. 399, 404 (1941).

Cingular's implied-conflict-preemption argument is based on the premise that if enforcement of its arbitration provision is conditioned upon the availability of class treatment in the arbitral forum, the objectives of Congress in enacting the FAA will be defeated. Cingular argues that the benefits of arbitration, including efficiency and lower cost, will be lost by requiring class arbitration. In effect, Cingular's position is that any outcome that discourages arbitration of *individual* claims is in conflict with the FAA and is, therefore, impliedly preempted. Cingular cites many sources demonstrating that encouraging

arbitration is, indeed, a strong federal objective, but offers no authority for the claim that individual arbitration, rather than class arbitration, is favored.

We, therefore, reject Cingular's claim of conflict preemption. The FAA does not require state courts, when applying state law to a question of the enforceability of a particular contract, to necessarily reach an outcome that encourages individual arbitration. Further, class arbitration cannot be in conflict with the FAA when the Supreme Court has recognized the arbitrability of class claims.

In 2003, the United States Supreme Court held in *Green Tree Financial Corp. v. Bazzle*, 539 U.S. 444, 156 L. Ed. 2d 414, 123 S. Ct. 2402 (2003), that class actions may be arbitrated when the agreement between the parties is silent on the question. Rejecting Green Tree's argument that class arbitration should be permitted only when the arbitration agreement expressly provided for it, the Supreme Court held that whether class claims could be arbitrated was a decision that an arbitrator should make when the arbitration clause does not expressly prohibit class arbitration. *Green Tree*, 539 U.S. at 454, 156 L. Ed. 2d at 423-24, 123 S. Ct. at 2408.

In response to this decision, the AAA subsequently promulgated rules governing class arbitration. These rules contain provisions similar to Federal Rule of Civil Procedure 23 (Fed. R. Civ. P. 23). The AAA's policy with regard to class arbitration is that it "will administer demands for class arbitration *** if (1) the underlying agreement specifies that disputes arising out of the parties' agreement shall be resolved by arbitration in accordance with any of the Association's rules, and (2) the agreement is silent with respect to class claims, consolidation or joinder of claims." AAA Policy on Class Arbitrations, available at http://www.adr.org/sp.asp?id=25967.

The Court's holding in *Green Tree* and the AAA policy suggest that an arbitration agreement expressly waiving the ability to arbitrate class claims is enforceable. Thus, under the preemption principles discussed above, unless the class action waiver, the arbitration clause, or the contract itself is unenforceable under generally applicable principles of state law, such a provision must be enforced.

In sum, the FAA neither expressly nor impliedly preempts a state court from holding that an arbitration clause or a specific provision within an arbitration clause is unenforceable; it merely frames the issue by requiring that a state court examine the disputed provision in the same manner that it would examine any contract. Because our analysis on the question of class action waivers is applicable to all contracts governed by Illinois law, it can be applied to render the class action waiver in an arbitration clause unenforceable without undermining the goals and policies of the FAA.

Unconscionability

The trial court found the entire arbitration clause unconscionable and, therefore, unenforceable. The appellate court found the arbitration clause as a whole to be enforceable, but the prohibition on class arbitration to be both procedurally and substantively unconscionable. Under this ruling, although Cingular is entitled to demand arbitration of plaintiff's individual claim, it cannot preclude arbitration of her class claim. 357 Ill. App. 3d at 568.

In reaching this conclusion, the appellate court relied on earlier appellate court decisions holding that a contract or contract term cannot be deemed unconscionable unless it is both procedurally and substantively unconscionable. 357 Ill. App. 3d at 562, citing *Zobrist v. Verizon Wireless*, 354 Ill. App. 3d 1139, 1147 (2004). In addition, the appellate court employed a sliding scale under which a provision may be found unconscionable if is "extremely substantively unconscionable" but only "slightly procedurally unconscionable, and *vice versa*." 357 Ill. App. 3d at 562, citing *Ting v. AT&T*, 319 F.3d 1126 (9th Cir. 2003).

Subsequent to the appellate court's ruling in the present case, this court decided the case of *Razor v. Hyundai Motor America*, 222 Ill. 2d 75 (2006), in which we rejected the requirement that both procedural and substantive unconscionability must be found before a contract or a contract provision will be found to be unenforceable. A finding of unconscionability may be based on either procedural or

substantive unconscionability, or a combination of both. *Razor*, 222 Ill. 2d at 99.

Before this court, Cingular argues that the class action waiver contained in its arbitration provision is neither procedurally nor substantively unconscionable. At oral argument, counsel for Cingular acknowledged that the ability of a Cingular customer to bring a claim on behalf of a class in any forum is entirely foreclosed by the combination of the mandatory arbitration provision and the class action waiver, but argued that such a limitation is not unconscionable under Illinois law.

Plaintiff argues that the prohibition on class arbitration is both procedurally and substantively unconscionable. Plaintiff alleged in her pleadings that several clauses in the service agreement, including the arbitration clause and the class action waiver therein, act in combination to further Cingular's unlawful scheme to collect an illegal penalty by making it cost prohibitive for individual customers to vindicate this particular claim.

Before we consider the various arguments made by the parties, we must clarify the precise issue before this court. The appellate court found the arbitration clause to be enforceable, but the class action waiver to be unconscionable. This appeal was brought by Cingular, to obtain review of the appellate court's ruling with regard to the class action waiver provision. Plaintiff did not seek review of the ruling on the arbitration clause itself. Thus, the enforceability of the arbitration clause itself is no longer at issue. The issue in this appeal is whether the class action waiver is unconscionable. That question, however, cannot be answered without viewing the waiver provision in the context of the service agreement as a whole and against the backdrop of the precise claim made by the plaintiff. See, *e.g.*, *Pierce v. Catalina Yachts, Inc.*, 2 P.3d 618, 624 n.28 (Alaska 2000) (stating that "the legal issue of unconscionability hinges on the totality of the circumstances"), cited with approval in *Razor*, 222 Ill. 2d at 100.

The determination of whether a contract or a portion of a contract is unconscionable is a question of law, which we review *de novo*. *Razor*, 222 Ill. 2d at 99.

Procedural Unconscionability

"Procedural unconscionability refers to a situation where a term is so difficult to find, read, or understand that the plaintiff cannot fairly be said to have been aware he was agreeing to it ***." *Razor*, 222 Ill. 2d at 100, citing with approval *Frank's Maintenance & Engineering, Inc. v. C.A. Roberts Co.*, 86 Ill. App. 3d 980, 989 (1980). This analysis also takes into account the disparity of bargaining power between the drafter of the contract and the party claiming unconscionability. *Razor*, 222 Ill. 2d at 100.

*Frank's Maintenance* involved a dispute between two business entities, an engineering firm and a supplier of steel tubing. The seller's warranty did not contain an arbitration clause. Rather, the disputed provision was a limitation of the seller's liability for consequential damages. *Frank's Maintenance*, 86 Ill. App. 3d at 992-93. Because *Frank's Maintenance* involves generally applicable principles of Illinois law, it is entirely appropriate that it be applied to determine whether the class action waiver in the Cingular arbitration clause is unconscionable.

In *Razor*, we cited portions of *Frank's Maintenance* with approval, but we did not quote at length from that opinion. We do so now:

> "Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of a meaningful choice. [Citations.] Factors to be considered are all the circumstances surrounding the transaction including the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print; both the conspicuousness of the clause and the negotiations relating to it are important, albeit not conclusive factors in determining the issue of unconscionability. [Citation.] To be a part of the bargain, a provision limiting the defendant's liability must, unless incorporated into the contract through prior course of

dealings or trade usage, have been bargained for, brought to the purchaser's attention or be conspicuous. *** Nor does the mere fact that both parties are businessmen justify the utilization of unfair surprise to the detriment of one of the parties ***. [Citation.] This requirement that the seller obtain the knowing assent of the buyer 'does not detract from the freedom to contract, unless that phrase denotes the freedom to impose the onerous terms of one's carefully drawn printed document on an unsuspecting contractual partner. Rather, freedom to contract is enhanced by a requirement that both parties be aware of the burdens they are assuming. The notion of free will has little meaning as applied to one who is ignorant of the consequences of his acts.' [Citations.]" *Frank's Maintenance*, 86 Ill. App. 3d at 989-90.

We note, in particular, our agreement with the proposition that the issue of unconscionability should be examined with reference to all of the circumstances surrounding the transaction. In addition, the doctrine of unconscionability should be at least as protective of individual consumers who enter into contracts with commercial entities as it is of one business that enters into a contract with another business. See, *e.g.*, *Pierce*, 2 P.3d at 623 ("Courts are more likely to find unconscionability when a consumer is involved, when there is a disparity in bargaining power, and when the consequential damages clause is on a pre-printed form"), quoted with approval in *Razor*, 222 Ill. 2d at 100.

The appellate court's finding of procedural unconscionability was based on several factors. First, the service agreement containing the class action waiver was "offered in a form contract on a take-it-or-leave it basis," which the appellate court found was "an important factor to consider." Second, the appellate court quoted *Frank's Maintenance* for the proposition that "in order to be a part of the parties' bargain, a contract provision must be 'bargained for, brought to the [consumer's] attention[,] or *** conspicuous." 357 Ill. App. 3d at 563, quoting *Frank's Maintenance*, 86 Ill. App. 3d at 990. Although the class action waiver term in the arbitration provision may have been

brought to plaintiff's attention by the capitalized portion of the introductory paragraph at the top of the terms-and-conditions page (357 Ill. App. 3d at 563-64), the appellate court concluded that the arbitration clause containing the waiver provision could not have been "less conspicuous" because it was "hidden in a maze of fine print where it was unlikely to be noticed, much less read." (357 Ill. App. 3d at 563, 564). This, the appellate court held, was "sufficient for a finding of procedural unconscionability." 357 Ill. App. 3d at 564.

Cingular distinguishes *Razor* and *Frank's Maintenance* on their facts and argues that neither case supports a finding that the class action waiver is procedurally unconscionable. In *Razor*, a disclaimer of consequential damages was contained in a warranty in the owner's manual that was in the glove compartment of the car when it was delivered to the buyer. We concluded that "whatever other context there might be in which a contractual provision would be found to be procedurally unconscionable, that label must apply to a situation such as the case at bar where plaintiff has testified that she never saw the clause; nor is there any basis for concluding that plaintiff could have seen the clause, before entering into the sale contract." *Razor*, 222 Ill. 2d at 102. In *Frank's Maintenance*, the language limiting the plaintiff's remedies was printed on the reverse side of the sale contract. A clause directing the plaintiff's attention to the conditions printed on the reverse was stamped over, suggesting that the obscured language was irrelevant and could be ignored. *Frank's Maintenance*, 86 Ill. App. 3d at 991-92. These two cases are distinguishable from the present case, Cingular argues, because the front of its service agreement clearly refers to the terms and conditions printed on the back and plaintiff indicated by her signature that she read and accepted these terms.

Plaintiff responds that even though *Razor* may be factually dissimilar to the present case, it is important authority for the principle that unconscionability must be determined by consideration of all of the circumstances surrounding the transaction. Thus, plaintiff notes, the fact that the directing clause had been obscured in the contract at issue in *Frank's Maintenance* was merely one relevant factor in the

unconscionability analysis, but it was not the sole basis for the finding of procedural unconscionability. See *Frank's Maintenance*, 86 Ill. App. 3d at 991-92.

Considering the totality of the circumstances, we conclude that the facts and circumstances of *Razor* and *Frank's Maintenance* are largely distinguishable from the present case. Plaintiff did sign the front page of the service agreement and she did initial an acknowledgment provision on the front of the form, stating that she had read the terms and conditions on the back. There is no dispute that the terms and conditions were in her possession and she either read them or could have read them if she had chosen to do so.

The Cingular service agreement is a contract of adhesion. The terms, including the arbitration clause and the class action waiver therein, are nonnegotiable and presented in fine print in language that the average consumer might not fully understand. Such contracts, however, are a fact of modern life. Consumers routinely sign such agreements to obtain credit cards, rental cars, land and cellular telephone service, home furnishings and appliances, loans, and other products and services. It cannot reasonably be said that all such contracts are so procedurally unconscionable as to be unenforceable.

One fact, however, does make the arbitration clause in Cingular's service agreement similar to the disclaimer invalidated in the warranty in *Razor*. The agreement plaintiff signed obligated her to negotiate any claims in good faith and to submit to arbitration if negotiations with Cingular were to fail. However, the agreement did not put her on notice that she would bear any of the costs associated with arbitration. The agreement merely stated that "fee information" was available from Cingular or the AAA "upon request." This statement, incorporating by reference information that was not provided to plaintiff at the time she signed the agreement, was in fine print near the bottom of an 8 by 14 inch page that was filled, from margin to margin, with text. This statement was not emphasized in any way.

We conclude that there is a degree of procedural unconscionability in the service agreement signed by plaintiff because it did not inform her that she would have to pay

anything at all towards the cost of arbitration. She was merely informed that "fee information" was available "upon request." This lack of information regarding the cost of arbitration is an "additional fact particular to this case [which] tips the balance in plaintiff's favor" (*Razor*, 222 Ill. 2d at 100), on the question of procedural unconscionability of the contract of which the class action waiver is a part. We do not find this degree of procedural unconscionability to be sufficient to render the class action waiver unenforceable, but it is a factor to be considered in combination with our findings on the question of substantive unconscionability.

*Substantive Unconscionability*

The appellate court found the class action waiver in the Cingular service agreement to be substantively unconscionable for two reasons. First, because the cost of litigating or arbitrating a claim for $150 would have approached if not exceeded the potential recovery, "consumers in the plaintiff's position are left without an effective remedy in the absence of a mechanism for class arbitration or litigation." 357 Ill. App. 3d at 564. Second, the limitation is one-sided because commercial entities like Cingular do not have occasion to sue their customers as a class. That is, although both parties ostensibly waived the ability to pursue a class action, the limitation applies, in practice, only to prevent customers " 'from seeking redress for relatively small amounts of money.' " 357 Ill. App. 3d at 565, quoting *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1101, 118 Cal. Rptr. 2d 862, 867 (2002).

This court has not had frequent occasion to define the term "substantive unconscionability" or to apply such a definition. See, *e.g.*, *Streams Sports Club, Ltd. v. Richmond*, 99 Ill. 2d 182, 191 (1983) (noting that a contract is unconscionable "when it is improvident, oppressive, or totally one-sided," but that "mere disparity in bargaining power is not sufficient grounds to vitiate contractual obligations"). In *Razor*, we noted only that substantive unconscionability refers to terms that are "inordinately one-sided in one party's favor." *Razor*, 222 Ill. 2d at 100.

*Frank's Maintenance* contains a more detailed explanation of the concept of substantive unconscionability, but that explanation is of somewhat limited usefulness because it focuses transactions between two commercial entities. See *Frank's Maintenance*, 86 Ill. App. 3d at 990-91 ("Substantive unconscionability concerns the question whether the terms themselves are commercially reasonable").

Our appellate court in *Hutcherson v. Sears Roebuck & Co.*, 342 Ill. App. 3d 109, 121 (2003), because it was applying Arizona law under a choice of law provision, looked to a decision of the Arizona Supreme Court for a definition of substantive unconscionability. We find that definition apt:

> "Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. [Citation.] Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Maxwell v. Fidelity Financial Services, Inc.*, 184 Ariz. 82, 89, 907 P.2d 51, 58 (1995).

Applying this definition of substantive unconscionability to the alleged facts in this case, the issue is: whether a waiver of the ability to bring a class claim is so onerous or oppressive that it is substantively unconscionable when: (1) the waiver is contained in a contract that contains a mandatory arbitration provision, but does not reveal the cost of arbitration to the claimant, (2) the cost will be $125, and (3) the underlying claim involves actual damages of $150.

The nature of the underlying claim is also relevant to this inquiry. Some claims will be obvious to the typical consumer. For example, if a consumer is charged twice for the same product or service, is charged for a product or service that was not received, or is charged a fee that is not specified in the contract, he or she can be expected to recognize such a claim. An individual consumer can bring such a claim to the attention of the other party and, if not satisfied with the response, may be able to make his or her case in arbitration or in small claims court without the assistance of an attorney.

˘23˘

Other claims, however, are not likely to be recognized, let alone successfully argued in court or arbitration, without the aid of an attorney. In the present case, the underlying claim is that the $150 early termination fee is unenforceable as a penalty. The typical consumer cannot be expected to know that:

> " 'Damages for breach by either party may be liquidated in the agreement but only at an amount that is reasonable in light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss. A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty.' " *H&M Commercial Driver Leasing, Inc. v. Fox Valley Containers, Inc.*, 209 Ill. 2d 52, 71 (2004), quoting Restatement (Second) of Contracts §356 (1981).

The typical consumer may feel that such a charge is unfair, but only with the aid of an attorney will the consumer be aware that he or she may have a claim that is supported by law, and only with the aid of an attorney will such a consumer be able to make the merits of such a claim apparent in arbitration or litigation. Thus, when considering the "cost-price disparity" factor (*Maxwell*, 184 Ariz. at 89, 907 P.2d at 58), of substantive unconscionability, we must consider that the cost to plaintiff of attempting to vindicate her $150 claim, in the absence of the ability to bring a class claim, would be $125 plus her attorney fees. As a result, if she were to prevail on the merits of her claim and be awarded $150 in damages, it is an absolute certainty that she would not be made whole.

Cingular makes four arguments on the issue of substantive unconscionability. First, Cingular cites several cases from our appellate court in support of its position that the standard for a finding of substantive unconscionability is so "demanding" that the facts of this case cannot meet it. Second, Cingular argues that the appellate court improperly distinguished this case from the facts of *Hutcherson* and *Rosen v. SCIL, LLC*, 343 Ill. App. 3d 1075 (2003). In both of these cases, the appellate court found a class action waiver to be enforceable. Third, Cingular states that the "overwhelming majority rule around the country" is that class action waivers contained in arbitration provisions

are not unconscionable if the arbitration provision "neither requires the consumer to pay greater costs than he or she would have to bear in court nor prohibits the arbitrator from awarding a prevailing plaintiff her attorneys' fees under applicable fee-shifting statutes." Cingular further states that its original arbitration provision satisfies these conditions. Fourth, Cingular argues that plaintiff's ability to bring her claim in small claims court is "a recognized means of vindicating small claims." At oral argument, counsel for Cingular made the related argument that when the class action mechanism is not available to consumers, as under its service agreement, the public is still protected by the provision of the Consumer Fraud Act, which allows the Attorney General to bring an action and to compel a company to disgorge funds illegally obtained (815 ILCS 505/7 (West 2002)).

In support of its first argument, Cingular cites *Basselen v. General Motors Corp.*, 341 Ill. App. 3d 278, 288 (2003), for the proposition that a contract is substantively unconscionable only if its terms are "grossly one-sided." In addition, Cingular cites *In re Estate of Croake*, 218 Ill. App. 3d 124, 127 (1991), for the proposition that a contract is substantively unconscionable if "only one under delusion" would make it. These two descriptions of substantive unconscionability are accurate in the sense that a contract that meets either of these descriptions is surely unconscionable. We find these definitions to be underinclusive and have adopted the *Maxwell* court's definition of substantive unconscionability as a more complete statement of the doctrine.

We next address Cingular's argument that the appellate court's decision in the present case is in conflict with the decisions in *Hutcherson* and *Rosen*, both of which found class action waivers to be enforceable. The *Hutcherson* court applied Arizona law to a provision in a credit card agreement that required the claimant to choose between small claims court or arbitration of any claim. The agreement further provided that the claimant could not participate as a representative or a member of a class of claimants. The appellate court concluded that this provision was not substantively unconscionable. In reaching this conclusion, the appellate court considered

several cases from other jurisdictions (see *Hutcherson*, 342 Ill. App. 3d at 121) that had found class action waivers unconscionable. However, the court concluded that the circumstances that led to the conclusion of unconscionability in those cases was not present in the case before it. *Hutcherson*, 342 Ill. App. 3d at 122. Specifically, the arbitration provision containing the class action waiver required the credit card company to advance any fees required of the claimant by the National Arbitration Forum and provided that the claimant could not be required to refund the advanced fees unless the arbitrator determined that the claim was frivolous. Thus, the cost to the claimant of submitting a nonfrivolous claim to arbitration would be minimal. *Hutcherson*, 342 Ill. App. 3d at 122.

In *Rosen*, another dispute between a credit cardholder and the credit card company, the court noted that, "[a]s in *Hutcherson*, the factors that were present in the cases in which [class action limitations in] arbitration agreements were found unconscionable are not present in this case." *Rosen*, 343 Ill. App. 3d at 1082. Further, the plaintiff in *Rosen* presented "almost no argument as to why" the court should find the provision unconscionable. *Rosen*, 343 Ill. App. 3d at 1082.

The appellate court distinguished the present case from *Hutcherson* on the ground that the arbitration provision at issue in that case "provided that the defendant creditor would advance any arbitration fees required to be paid by the plaintiff consumer ***. Each contract further provided that the consumer would only be required to repay these expenditures if an arbitrator determined that the consumer was required to do so ***." 357 Ill. App. 3d at 567. *Rosen* was distinguished in the same manner.

While we express no opinion on the merits of the judgments rendered in *Hutcherson* and *Rosen* regarding the enforceability of a class action waiver, we agree with the appellate court that the present case is readily distinguishable from these two cases.

Cingular next argues that the majority of jurisdictions that have ruled on this issue have enforced class action waivers. Under the reasoning of these decisions, Cingular asserts, the

class action waiver in its service agreement is not substantively unconscionable given its "offer to bear all the costs of arbitration and to reimburse successful claimants for their attorney's fees." In the present case, however, we are not determining whether Cingular's revised arbitration clause is substantively unconscionable. Our focus is on the agreement plaintiff signed in 2001.

In the alternative, Cingular argues that the class action waiver in its original service agreement is not substantively unconscionable. In support of this argument, Cingular cites *Rosen* and *Hutcherson*, which we have already discussed, and *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159 (5th Cir. 2004), in which, Cingular argues, the court of appeals rejected a challenge to the identical provision that is at issue in the present case.

In *Iberia Credit Bureau*, plaintiffs brought putative class actions against several cellular telephone service providers, including Cingular, alleging that certain deceptive billing practices constituted breaches of contract and violations of the Louisiana Unfair Trade Practices Act. The action was removed to federal court on the basis of diversity. Louisiana state law applied. *Iberia Credit Bureau*, 379 F.3d at 161-62.

Based on the portions of the Cingular service agreement quoted by the court of appeals, it appears that the arbitration clause at issue in *Iberia Credit Bureau* is the same clause that is at issue in the present case. We note, however, that the court of appeals stated that certain provisions of Cingular's arbitration clause, "such as the responsibility for the costs of arbitration proceedings," were not at issue in the appeal. *Iberia Credit Bureau*, 379 F.3d at 163 n.3. In the present case, however, plaintiffs have argued that the cost of arbitration proceedings is a relevant consideration in determining whether the class action waiver is substantively unconscionable.

Under Louisiana law, a contract provision must "possess features of both adhesionary formation and unduly harsh substance" before it will be declared unconscionable. *Iberia Credit Bureau*, 379 F.3d at 167. The plaintiffs attempted to meet the procedural unconscionability prong of this test–"adhesionary formation"–by relying entirely on Cingular's

use of fine print. The court of appeals found type size to be a relevant consideration, but held that fine print alone does not render an arbitration clause procedurally unconscionable, particularly where the type used in the arbitration provision is the same size as that used in the rest of the contract. *Iberia Credit Bureau*, 379 F.3d at 172.

The court of appeals then examined the bar on class actions contained in the Cingular arbitration clause. The plaintiffs in *Iberia Credit* argued that the bar on collective proceedings had "the effect of immunizing the defendants from low-value claims, no matter how meritorious those claims might be," and that the arbitration clause was "not so much an alternative method of dispute resolution" as it was "a system for avoiding liability altogether." *Iberia Credit Bureau*, 379 F.3d at 174.

The court of appeals ultimately rejected this claim of substantive unconscionability, stating:

> "A highly relevant factor in considering the equities of the arbitration clauses in this case is that the Louisiana Unfair Trade Practices Act (LUTPA), which is one basis of the plaintiffs' claims, does not permit individuals to bring class actions. [Citations.] Although this prohibition does not apply to plaintiffs' breach-of-contract cause of action, it does significantly diminish the plaintiffs' argument that prohibiting class proceedings in consumer litigation is unconscionable under Louisiana law. Moreover, LUTPA does permit the state attorney general to sue on behalf of the state and its consumers to pursue restitutionary relief on behalf of a class of aggrieved consumers [Citations.]. This further tends to show that the arbitration clause does not leave the plaintiffs without remedies or so oppress them as to rise to the level of unconscionability." *Iberia Credit Bureau*, 379 F.3d at 174-75.

Further, the court of appeals observed that Cingular's arbitration clause expressly permitted customers "to bring inexpensive small-claims actions." *Iberia Credit Bureau*, 379 F.3d at 175 n.19.

ˇ28ˇ

We find *Iberia Credit Bureau* to be of interest, but we are not persuaded to follow it. Illinois law differs significantly from Louisiana law. First, we need not find both procedural and substantive unconscionability to conclude that a contract provision is unconscionable. *Razor*, 222 Ill. 2d at 99-100. Because Louisiana law requires both, once the court determined that "adhesionary formation" was not shown, any discussion of "unduly harsh substance" was mere *dicta*. Second, our Consumer Fraud Act, unlike Louisiana's LUTPA, does not bar a plaintiff from bringing his statutory claim both individually and on behalf of a class of similarly situated individuals. Thus, unlike the Louisiana consumer, the Illinois consumer does lose the ability to be either the representative of or a member of a class if the class action waiver is enforced. As for the ability of the Attorney General to vindicate class claims and the availability of small claims court, we address these issues below.

Having examined the cases cited by the parties, we conclude that it is not useful to do a simple head count of the number of state courts to have ruled a certain way on class action waivers. Each of these cases presents an application of the law of a particular state, to a class action waiver in a contract with other provisions that may affect the assessment of the waiver itself, in the context of the arguments raised by the parties to that case. We look to these cases, therefore, to discern a pattern that might guide us.

Our research reveals that other state courts have invalidated class action waivers when the contract containing the waiver is burdened by other unfair features, rendering it substantively unconscionable when taken as a whole. See, *e.g.*, *Leonard v. Terminix International Co.*, 854 So. 2d 529, 538-39 (Ala. 2002) (finding arbitration clause unconscionable because it is in a contract of adhesion that limits recovery of "indirect, special, and consequential damages" and restricts plaintiffs to "a forum where the expense of pursuing their claim far exceeds the amount in controversy," by foreclosing "practical redress through a class action and limiting them to a disproportionately expensive individual arbitration"); *Discover*

*Bank v. Superior Court of Los Angeles*, 36 Cal. 4th 148, 162-63, 113 P.3d 1100, 1110, 30 Cal. Rptr. 3d 76, 87 (2005) (hereinafter *Boehr*) (stating in judicial *dicta* that class action waivers are unconscionable "at least under some circumstances," such as "when the waiver is found in a consumer contract of adhesion in a setting in which disputes between the contracting parties predictably involve small amounts of damages, and when it is alleged that the party with the superior bargaining power has carried out a scheme to deliberately cheat large numbers of consumers out of individually small sums of money"); *Aral v. Earthlink, Inc.*, 134 Cal. App. 4th 544, 564, 36 Cal. Rptr. 3d 229, 244 (2005) (applying *Boehr* test to find class action waiver unconscionable as applied to California consumer who sought to represent only California consumers, whose individual claims amounted to $40 or $50, where defendant allegedly engaged in scheme to defraud, and where forum selection clause would have required arbitration of all claims in Georgia); *Klussman v. Cross Country Bank*, 134 Cal. App. 4th 1283, 1299, 36 Cal. Rptr. 3d 728, 740-41 (2005) (following test set out in *Boehr* to find a class action waiver unconscionable when was not contained in the parties' agreement, but was incorporated by reference to the rules of the arbitral forum, which the customer could obtain by calling an "800" number); *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1101, 118 Cal. Rptr. 2d 862, 867 (2002) (finding class action waiver procedurally and substantively unconscionable where the provision was "clearly meant to prevent customers *** from seeking redress for relatively small amounts of money," and where if an individual customer does obtain a remedy, it "will only pertain to that single customer without collateral estoppel effect"); *Bellsouth Mobility LLC v. Christopher*, 819 So. 2d 171, 173 (Fla. App. 2002) (finding arbitration clause substantively unconscionable where it limited defendant's liability to actual damages, "even if its conduct rises to the level of outrageousness required to assess punitive damages," removes exposure to class action suit even if class treatment may be warranted, and binds the customer to arbitration while allowing defendant the option of litigating some claims, including collection of a debt); *Powertel, Inc. v. Bexley*, 743 So. 2d 570, 575-76 (Fla. App. 1999) (finding arbitration

clause unconscionable based on "deficiencies in the notice" of revised terms and fact that the clause forced customers to "waive important statutory remedies" under state consumer laws, effectively insulating defendant from liability, and where "potential claims are too small to litigate individually"); *Whitney v. Alltel Communications, Inc.*, 173 S.W.3d 300, 313-14 (Mo. App. 2005) (arbitration clause was unconscionable where dispute involved allegedly deceptive $0.88-per-month charge applied to all customers' bills and where arbitration clause prohibited class actions, required customer to bear costs of arbitration, and prohibited award of incidental, consequential, or exemplary damages, or attorney fees that would otherwise be available under state law); *Muhammad v. County Bank of Rehoboth Beach, Delaware*, No. A–39–05, slip op. at 3, 24 (N.J. August 9, 2006) (holding that class action waiver in payday loan agreement is unconscionable "whether in arbitration or in court litigation," because such waivers can "functionally exculpate wrongful conduct by reducing the possibility of attracting competent counsel to advance the cause of action" where individual claims are small); *State ex rel. Dunlap v. Berger*, 211 W. Va. 549, 566, 567 S.E.2d 265, 282 (2002) (holding that "provisions in a contract of adhesion that if applied would impose unreasonably burdensome costs upon or would have a substantial deterrent effect upon a person seeking to enforce and vindicate rights and protections or to obtain statutory or common law relief and remedies *** under state law" are unconscionable). See also *Ting*, 319 F.3d at 1149-52 (applying California law as set out in *Szetela* to conclude that the legal remedies clause in defendant's form contract was substantively unconscionable, not because it required arbitration of all disputes, but because the class action waiver therein lacked mutuality where carrier would not be likely to bring a class action against its customers; the legal remedies clause also sharply curtailed damages for intentional torts, imposed secrecy on arbitration that benefitted the carrier to the detriment of customers, and imposed costs on some customers that would exceed the cost of bringing the same claim in court); *Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1190 (S.D. Cal. 2005) (applying California law to find arbitration clause containing class action waiver substantively

unconscionable where plaintiffs alleged that defendant companies charged customers sales tax on full retail value of cellular phones that were advertised as free as part of a scheme to deliberately cheat large numbers of customers out of small sums of money).

None of these cases held class action waivers to be *per se* unconscionable. Thus, a federal court applying West Virginia law concluded that, under the rule announced in *Dunlap*, an arbitration clause containing a class action waiver was not unconscionable where there was no evidence that the costs of arbitration would be prohibitive to the plaintiff, who sought more than $75,000 in damages. *Schultz v. AT&T Wireless Services, Inc.*, 376 F. Supp. 2d 685, 690-91 (N.D. W.Va. 2005).

Other state courts have upheld the validity of class action waivers, frequently relying on the principle of freedom of contract or the premise that a class action is merely a procedural device, which the parties may agree to forgo. See, *e.g.*, *Strand v. U.S. Bank National Ass'n ND*, 2005 ND 68, ¶21, 693 N.W.2d 918, 926 (finding "no class action" clause procedurally unconscionable but not substantively unconscionable because "[m]erely restricting the availability of a class action is not, by itself, a restriction on substantive remedies. The right to bring an action as a class action is purely a procedural right"). In *Strand*, however, the arbitration clause provided that arbitration would take place in the customer's home jurisdiction and that the bank would advance the fees and costs for arbitration. In addition, the customer would be entitled to an award of attorney fees if he prevailed at arbitration. Thus, there was "a chance" that the customer would "be made whole through individual arbitration." *Strand*, 2005 ND 68 at ¶23, 693 N.W.2d at 926-27. Thus, *Strand* is distinguishable from the present case. See also *Rains v. Foundation Health Systems Life & Health*, 23 P.3d 1249, 1254 (Colo. App. 2001) (enforcing arbitration provision requiring individual arbitration where plaintiff brought her claim as a class action, because the legislature is better able to determine whether to require class-wide arbitration in such cases or to make an exception to the statutory scheme intended to facilitate arbitration); *Fonte v. AT&T Wireless Services, Inc.*, 903 So. 2d 1019, 1025-26 (Fla. App. 2005) (under Florida law,

both procedural and substantive unconscionability are required to render contract unenforceable; thus, in absence of procedural unconscionability, agreement is enforceable; commentary that prohibition on class representation is enforceable because it did not defeat any remedial purpose of deceptive practices statute is *dicta*); *Walther v. Sovereign Bank*, 386 Md. 412, 438-42, 872 A.2d 735, 750-53 (2005) (enforcing "freely-signed agreement to arbitrate that includes a no-class-action provision which was conspicuously presented as part of the arbitration clause," despite "lender's failure to disclose the fees associated with an arbitration," where plaintiffs did not show the cost of arbitration to be "unduly burdensome"); *Gras v. Associates First Capital Corp.*, 346 N.J. Super. 42, 53, 786 A.2d 886, 892 (2001) (enforcing class action waiver where arbitration agreement allows successful plaintiff to achieve "all statutory remedies" under the state consumer fraud act in the arbitral forum, including compensation for actual loss, treble damages to punish the wrongdoer, and attorney fees); *Ranierei v. Bell Atlantic Mobile*, 304 A.D.2d 353, 354, 759 N.Y.S.2d 448, 449 (2003) (rejecting claim that class action waiver is unconscionable based on strong public policy favoring arbitration and "absence of a commensurate policy favoring class actions"); *Pyburn v. Bill Heard Chevrolet*, 63 S.W.3d 351, 357-63 (Tenn. Ct. App. 2001) (arbitration agreement is matter of consent of parties, who "can limit which issues will be arbitrated and specify the rules under which the arbitration will be conducted"; class action waiver in arbitration agreement is enforceable where plaintiff agreed to waiver clause and fails to prove that cost of arbitration would be greater than cost of litigation, and where plaintiff can vindicate his statutory claims "effectively through arbitration regardless of whether class action relief is available"; also finding the class action waiver issue preempted by federal law when the waiver is contained in an arbitration clause, even if such waiver would "violate the intent" of the state legislature); and *AutoNation USA Corp. v. Leroy*, 105 S.W.3d 190, 200 (Tex. 2003) ("While there may be circumstances in which a prohibition on class treatment may rise to the level of fundamental unfairness, [plaintiff's] generalizations do not

satisfy her burden to demonstrate that the arbitration provision is invalid here").

If there is a pattern in these cases it is this: a class action waiver will not be found unconscionable if the plaintiff had a meaningful opportunity to reject the contract term or if the agreement containing the waiver is not burdened by other features limiting the ability of the plaintiff to obtain a remedy for the particular claim being asserted in a cost-effective manner. If the agreement is so burdened, the "right to seek classwide redress is more than a mere procedural device." *Klussman*, 36 Cal. Rptr. 3d at 738, 134 Cal. App. 4th at 1296. As the Supreme Court noted in *Deposit Guaranty National Bank v. Roper*, 445 U.S. 326, 63 L. Ed. 2d 427, 100 S. Ct. 1166 (1980),

> "Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Deposit Guaranty*, 445 U.S. at 339, 63 L. Ed. 2d at 440, 100 S. Ct. at 1174.

In *Deposit Guaranty*, the defendant bank attempted to shield itself from liability to a potential class of approximately 90,000 customers by tendering to each plaintiff the maximum amount that he or she might have recovered at trial. Over the objections of the plaintiffs, the district court entered judgment in their favor. *Deposit Guaranty*, 445 U.S. at 330, 63 L. Ed. 2d at 434, 100 S. Ct. at 1170. Thus, because no single plaintiff could demonstrate a live case or controversy, no class could ever be certified. The Court held that the defendant bank could not moot the plaintiffs' claims in this manner and that they could appeal the denial of class certification. *Deposit Guaranty*, 445 U.S. at 340, 63 L. Ed. 2d at 434, 100 S. Ct. at 1170.

Cingular similarly seeks to insulate itself from liability to a potential class of customers by enforcing a class action waiver in its standard service agreement. We find that under the circumstances of this case, the class action waiver is unconscionable and unenforceable. These circumstances include a contract of adhesion that requires the customer to arbitrate all claims, but does not reveal the cost of arbitration, and contains a liquidated damages clause that allegedly operates as an illegal penalty. These provisions operate

together to create a situation where the cost of vindicating the claim is so high that the plaintiff's only reasonable, cost-effective means of obtaining a complete remedy is as either the representative or a member of a class.

We note that several other provisions of the arbitration clause also burden an individual customer's ability to vindicate this claim. For example, the strict confidentiality clause that prohibits Cingular, the claimant, and the arbitrator from disclosing "the existence, content, or results of any arbitration," means that even if an individual claimant recovers on the illegal-penalty claim, neither that claimant nor her attorney can share that information with other potential claimants. Cingular, however, can accumulate experience defending these claims. See, *e.g.*, *Ting*, 319 F.3d at 1152 (finding that a strict confidentiality clause contributes to the substantive unconscionability of a contract term "by ensuring that none of [defendant's] potential opponents will have access to precedent while, at the same time, [defendant] accumulates a wealth of knowledge").

We express no opinion on the enforceability of Cingular's revised service agreement except to say that the enforceability of a class action waiver, whether or not the contract provides for mandatory arbitration, must be determined on a case-by-case basis, considering the totality of the circumstances. Relevant circumstances include the fairness and balance of the contract terms, the presence of unfair surprise, and the cost of vindicating the claim relative to the amount of damages that might be awarded under the dispute resolution provisions of the contract. See *Maxwell*, 184 Ariz. at 89, 907 P.2d at 58.


Availability of Small Claims Court or Regulatory Enforcement

The final sentence of the arbitration clause in Cingular's standard service agreement provides that, notwithstanding the arbitration requirement, "either party may bring an action in small claims court." Cingular argues that this option eliminates the possibility that a customer will lack a cost-effective means of vindicating a small claim. Cingular suggests that small claims court is often a better option than a class action for the resolution of small claims, citing *Pulver v. 1st Lake Properties, Inc.*, 681 So. 2d 965, 970 (La. App. 1996) (noting that a class

action may lead to a "complicated lengthy legal embattlement," while an individual can resolve her claim in small claims court "expeditiously and with minimum costs and fees").

*Pulver* involved a failed attempt at class certification of a class 700 to 1,000 tenants who may or may not have had claims against their various landlords for damages as a result of a flood. The court affirmed the denial of class certification on the basis that the plaintiffs did not meet any of the requirements for certification of a class. The individual claims of the eight named plaintiffs were, however, within the jurisdiction of the small claims court. *Pulver*, 681 So. 2d at 970. *Pulver* is thus inapplicable to the present case. Indeed, the quoted language from *Pulver* merely suggests a reason that an individual plaintiff might opt out of a class action to pursue an individual claim in small claims court. It does not support the argument that, in the present case, small claims adjudication is a cost-efficient means for plaintiff to vindicate her claim against Cingular.

Cingular also relies on *Jenkins v. First American Cash Advance of Georgia, LLC*, 400 F.3d 868, 879 (11th Cir. 2005) (holding that, under Georgia law, contract provision allowing access to small claims tribunal applies equally to both parties). Cingular does not explain, however, how the mutual availability of the small claims forum might render an otherwise unconscionable contract provision enforceable.

Both parties call our attention to *Iberia Credit Bureau*. Cingular states that the court of appeals "focused on" the availability of small claims court when it rejected the plaintiff's argument that the class action waiver made it impossible for individuals to pursue individual small claims. Plaintiff disputes that this was a "focus" of the court of appeals since the availability of small claims adjudication was not discussed in the body of the opinion, but was merely referred to in a footnote. *Iberia Credit Bureau*, 379 F.3d at 175.

We conclude that, given the particular facts and circumstances of this case, the availability of a judicial forum for individual small claims does not render the prohibition on class treatment of plaintiff's claim enforceable. In this case, the small claims forum has the same limitations as the arbitral forum. Plaintiff, whose actual damages total $150, would have

to pay a filing fee and hire an attorney to litigate her claim that the early-termination fee is an illegal penalty. Indeed, the *gravamen* of her complaint is that Cingular drafted the contract terms with the intent to impose an illegal penalty for early termination in such a manner as to make any challenge to the fee cost-prohibitive in either arbitration or small claims court.

Similarly, we are not persuaded that the ability of the Attorney General to bring an action under the Consumer Fraud Act (815 ILCS 505/7 (West 2002)) renders the class action waiver in the Cingular service agreement enforceable. Although the Attorney General could challenge the early-termination fee on behalf of the consumers of Illinois, she must allocate scarce resources to a variety of issues affecting consumers. There is no guarantee that the Attorney General would find the particular claim raised by plaintiff to be a high priority. If we were to conclude that the mere possibility of governmental action were sufficient to overcome the substantive and procedural flaws in Cingular's class action waiver, we would be denying plaintiff and other consumers any remedy for the allegedly illegal $150 penalty, at least until the Attorney General had the resources and the incentive to pursue the issue. See, *e.g.*, *Deposit Guaranty*, 445 U.S. at 338-39, 63 L. Ed. 2d at 440, 100 S. Ct. at 1174 ("The aggregation of individual claims in the context of a classwide suit is an evolutionary response to the existence of injuries unremedied by the regulatory action of government" and noting "increasing reliance on the 'private attorney general' for the vindication of legal rights" via class actions).

Severability

The Cingular service agreement provides that "[i]f any provision of this Agreement is found to be unenforceable by a court or agency of competent jurisdiction, the remaining provisions will remain in full force and effect." Nevertheless, Cingular argues that the appellate court erred by severing the class action waiver from the remainder of the arbitration clause. Cingular suggests that the issue of severability was decided without prior briefing by the parties and that both parties unsuccessfully sought rehearing on the issue. Thus, Cingular concludes, there is no justification for requiring the

parties to engage in a class arbitration to which neither party agreed and which neither party sought. In particular, Cingular argues that "class actions are inherently inconsistent with the streamlined nature of arbitration."

Plaintiff responds that the appellate court merely applied the plain language of the service agreement when it severed the class action waiver. In addition, plaintiff notes that the Supreme Court's holding in *Green Tree* implicitly recognizes the legitimacy of arbitral class actions. *Green Tree*, 539 U.S. at 453, 156 L. Ed. 2d at 423, 123 S. Ct. at 2407-08. Finally, the adoption of rules and procedures for class arbitration by the AAA indicates that class arbitration is entirely feasible.

Cingular replies that plaintiff is estopped from arguing in favor of severance of the unenforceable class action waiver because she argued in both the trial court and the appellate court that the waiver was not severable from the remainder of the arbitration clause. We note, however, that Cingular apparently argued to the appellate court that the offending clause was severable. 357 Ill. App. 3d at 568-69.

The appellate court offered three reasons for severing the unconscionable clause from the remainder of the arbitration provision. First, "the provision requiring the arbitration of disputes does not depend for its efficacy upon the provision barring class relief. The claim can still be arbitrated if the arbitrator is free to determine that class arbitration is appropriate." 357 Ill. App. 3d at 569. Second, the agreement has a severability clause, which reflects the parties' intent to give effect to the valid portions of the contract. Third, the strong policy in favor of enforcing arbitration agreements is best served by preserving the valid portions of the agreement while severing the unconscionable provision. 357 Ill. App. 3d at 569.

In *Spinetti*, the court of appeals considered whether an unenforceable provision could be severed from an arbitration clause in an employment agreement. Unlike the present case, the agreement did not contain a severability clause. The federal policy encouraging recourse to arbitration notwithstanding, the court of appeals looked first to the state law of contracts for the answer. *Spinetti*, 324 F.3d 214. Under the applicable law, as enunciated in the Restatement (Second) of Contracts §184, a court may sever the unenforceable portion

of an agreement and enforce the remainder " 'in favor of a party who did not engage in serious misconduct if the performance as to which the agreement is unenforceable is not an essential part of the agreed exchange.' " *Spinetti*, 324 F.3d 219, quoting Restatement (Second) of Contracts §184, at 30 (1981).

This court has not had occasion to consider this section of the Restatement, but our appellate court has long relied on the principle that an entire contract or a clause therein fails if the stricken portion constitutes an essential term of the contract or clause, but the remainder stands if the stricken portion is not essential to the bargain. See *People v. McNett*, 361 Ill. App. 3d 444, 448 (2005), citing Restatement (Second) of Contracts §184 (1981); *Stamatakis Industries, Inc. v. King*, 165 Ill. App. 3d 879, 889 (1987) (same); *Dryvit Systems, Inc. v. Rushing*, 132 Ill. App. 3d 9, 12 (1985) (same). See also *Muhammad*, slip op. at 31-33 (concluding that once the unconscionable class action waiver is removed, the remainder of the arbitration agreement is enforceable as a matter of state law). We agree with the appellate court that the existence of a severability clause and the strong public policy in favor of enforcing arbitration agreements weigh in favor of enforcing the arbitration clause without the offending class action waiver. Cingular, the party that drafted the contract containing the severability clause, has not persuaded us that the class action waiver was essential to its making of the agreement. We, therefore, affirm the appellate court's ruling on the issue of severability.

CONCLUSION

In sum, we hold that under the circumstances of this case, the waiver on class actions is unconscionable. It is not unconscionable merely because it is contained in an arbitration clause. It is unconscionable because it is contained in a contract of adhesion that fails to inform the customer of the cost to her of arbitration, and that does not provide a cost-effective mechanism for individual customers to obtain a remedy for the specific injury alleged in either a judicial or an

arbitral forum. We further hold that the offending clause is severable from the arbitration clause.

We do not hold that class action waivers are *per se* unconscionable. It is not unconscionable or even unethical for a business to attempt to limit its exposure to class arbitration or litigation, but to prefer to resolve the claims of customers or clients individually. Indeed, it has been suggested that, as a matter of economic theory, consumers may benefit from reduced costs if companies are allowed to engage in this strategy. See, *e.g.*, J. Sternlight & E. Jensen, *Using Arbitration to Eliminate Consumer Class Actions: Efficient Business Practice or Unconscionable Abuse?*, 67 Law & Contemp. Probs. 75, 92-99 (2004). The unconscionability of class action waivers must be determined on a case-by-case basis, considering the totality of the circumstances.

For the foregoing reasons, we affirm the judgment of the appellate court, which reversed the judgment of the circuit court, and remanded the cause to the trial court for further proceedings.

*Appellate court judgment affirmed.*

CHIEF JUSTICE THOMAS and JUSTICE BURKE took no part in the consideration or decision of this case.