THIRD DIVISION
May 19, 2010

No. 1-09-1793

| | | |
|---|---|---|
| SUZANNE RIDENOUR and DAN McNAMARA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs-Appellees and Cross-Appellants, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | |
| CARL SANDBURG VILLAGE No. 7 | ) | No. 08 CH 21639 |
| CONDOMINIUM ASSOCIATION, | ) | |
| | ) | |
| Defendant-Appellant and Cross-Appellee | ) | |
| | ) | |
| (Juliet DiIorio and Mary Guth, | ) | Honorable |
| | ) | William O. Maki, |
| Plaintiffs). | ) | Judge Presiding. |

JUSTICE STEELE delivered the opinion of the court:

This appeal arises from the trial court's grant of partial summary judgment on April 9, 2009, in favor of plaintiffs, Juliet DiIorio, Suzanne Ridenour, Dan McNamara and Mary Guth, and against defendant, Carl Sandburg Village No. 7 Condominium Association (Association), finding that improvements to limited common elements shall be assessed only to the unit owners who benefit from such improvements. Subsequently, on June 19, 2009, the trial court entered a second order, denying the Association's motion to reconsider and additionally finding that the Association may access the capital reserves for repair or replacement of the limited common elements in relation to those unit owners' ownership in the Association. Plaintiffs Ridenour and McNamara[1] filed a cross-appeal, seeking review of the trial court's order allowing the Association

---

[1]Plaintiff DiIorio moved from the building and plaintiff Guth passed away prior to the end of the lawsuit, so they were withdrawn as plaintiffs from the case.

to use a portion of the reserves and assessments for the repair of limited common elements. For the reasons that follow, we affirm.

BACKGROUND

The Association was established pursuant to the Illinois Condominium Property Act (Act) (765 ILCS 605/1 *et seq.* (West 2008)) and an amended and restated "Declaration of Condominium Ownership and of Easements, Restrictions, Covenants and By-Laws" (Declaration). The Association is comprised of a 6-story building with 96 units, known as the "Kilmer House," and a 43-story building with 520 units, known as the "James House." There is a common garage connecting the two buildings, and they also share common heating, ventilation and air conditioning systems.

Sometime in 2000, the Association approved the replacement of the windows for the Kilmer House. The project was paid for from the Association's capital reserves account without protest at a cost of $752,000. Additionally, the Association indicated that major repair work on the Kilmer House, including concrete and balconies, was performed in other years, most recently in 2004, and said repairs were funded solely by the capital reserves fund. In 2008, the Association determined that the windows for the James House needed to be replaced and proposed that the window replacement project be completed in 2009 or 2010, as it had previously done with previous repairs. The estimated cost of the James House window replacement project is $14 million.

Subsequently, four unit owners from the Kilmer House filed a verified complaint in which they sought a declaration that (1) the "James House windows are limited common elements," and

1-09-1793

(2) "the Association lacks authority to assess the cost of the James House window replacement project as a common expense." The Association filed a motion to dismiss on the grounds that there was no actual and justiciable controversy between the parties because the Association's board had not yet taken a final vote to execute the project, had not voted for or levied a special assessment on the Association's members to pay for the project, and had not signed a contract for the project. The trial court denied the Association's motion, and the Association then filed its answer and affirmative defenses. On February 20, 2009, plaintiffs filed a motion for summary judgment seeking a declaration that they, along with nonparty Kilmer House unit owners, cannot be assessed the cost of limited common elements that do not benefit them. The trial court granted plaintiffs' summary judgment motion, finding that the James House windows are limited common elements and that any assessment for their improvement should be assessed solely to the James House unit owners who benefit from the improvements.

On April 28, 2009, the Association filed a motion for clarification of the trial court's summary judgment order or, alternatively, for a finding pursuant to Illinois Supreme Court Rule 304(a). 210 Ill. 2d R. 304(a). On May 5, 2009, the trial court ruled that its order of April 9, 2009, was an interlocutory order granting partial summary judgment and required plaintiffs to file a supplemental summary judgment motion. Plaintiffs subsequently filed a supplemental summary judgment motion and sought a declaration that "the Association could not use any common expenses, operating funds, reserve accounts or anticipated future assessments from any Kilmer House unit owner to pay in any way, including by serving as collateral to secure financing, for the costs of repairing or replacing the James House windows." The Association filed a motion to

3

reconsider the trial court's order of April 9, 2009, and sought entry of judgment in its favor.

On June 19, 2009, the trial court entered a final order which denied the Association's motion to reconsider, required plaintiffs to amend their complaint to strike DiIorio and Guth as plaintiffs, and found:

> "The Board, subject to the Declaration, may access up to
>
> 83.3% (subject to verification of the James House unit owners'
>
> total percentage interest in the Association, as reflected in Exhibit B
>
> of the Declaration), of the capital reserves to use for repair or
>
> replacement of the James House windows, including to secure
>
> financing, and may use such percentage of monthly assessments
>
> pursuant to Section 6.01(a) of the Declaration as security for any
>
> financing for any such repair or replacement of such Limited
>
> Common Elements."

The Association filed its timely notice of appeal on July 9, 2009, and an amended notice of appeal on July 16, 2009. Plaintiffs filed a notice of cross-appeal on July 17, 2009.

DISCUSSION

On appeal, the Association raises the following issues: (1) whether the plain language of the Declaration requires reversal of the trial court's order; (2) whether the trial court's order violates other principles of contractual and statutory construction; (3) whether any ambiguities in the Declaration and any conflicting inferences to be drawn from the evidence require reversal of the summary judgment; and (4) whether any authority cited below supports the grant of summary

1-09-1793

judgment.

On cross-appeal, plaintiffs Ridenour and McNamara contend that the reserves are subject to the requirements in the Declaration that costs for limited common elements can only be assessed to the unit owners benefitted by the limited common elements.

Summary judgment should only be granted if "the pleadings, depositions, and admissions on file, together with affidavits, if any, present no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2006). While use of summary judgment is encouraged under Illinois law to aid in the expeditious disposition of a lawsuit (Purtill v. Hess, 111 Ill. 2d 229, 240 (1986)), it is a drastic means of disposing of litigation and should be allowed only when the right of the moving party is clear and free from doubt (McCullough v. Gallaher & Speck, 254 Ill. App. 3d 941, 948 (1993); Quality Lighting, Inc. v. Benjamin, 227 Ill. App. 3d 880, 883-84 (1992)). Summary judgment is appropriate if a party cannot establish an element of his or her claim. Willett v. Cessna Aircraft Co., 366 Ill. App. 3d 360, 368 (2006).

In appeals from summary judgment rulings, we conduct a *de novo* review. Atlantic Mutual Insurance Co. v. American Academy of Orthopaedic Surgeons, 315 Ill. App. 3d 552, 559 (2000). The reviewing court must construe all evidence strictly against the movant and liberally in favor of the nonmoving party. Willett, 366 Ill. App. 3d at 368; Atlantic Mutual, 315 Ill. App. 3d at 559. On appeal from the entry of summary judgment, the reviewing court is not to judge the strength of the evidence or weigh the credentials, credibility, and testimony of one deponent against another. McCullough, 254 Ill. App. 3d at 948. If reasonable persons could draw

5

different inferences from undisputed facts, summary judgment should be denied. Atlantic Mutual, 315 Ill. App. 3d at 559.

When a controversy regarding the rights of a condominium unit owner in a condominium arises, the court must examine any relevant provisions of the Act (765 ILCS 605/1 *et seq*. (West 2008)), and the Declaration or bylaws, and construe them as a whole. LaSalle National Trust, NA v. Board of Directors of the State Parkway Condominium Ass'n, 327 Ill. App. 3d 93, 96 (2001). The Act provides that " '[l]imited [c]ommon [e]lements' means a portion of the common elements so designated in the declaration as being reserved for the use of a certain unit or units to the exclusion of other units, including but not limited to balconies, terraces, patios and parking spaces or facilities." 765 ILCS 605/2(s) (West 2008). The Act further provides that the condominium instruments may provide "for the assessment, in connection with expenditures for the limited common elements, of only those units to which the limited common elements are assigned." 765 ILCS 605/9(e) (West 2008). The purpose of permitting the designation of limited common elements is to prevent the owners of certain units from being forced to pay a proportionate share of maintenance expenses for amenities from which they derive no benefit. Hofmeyer v. Willow Shores Condominium Ass'n, 309 Ill. App. 3d 380, 384 (1999).

Paragraph 1.07 of the Declaration defines limited common elements as "a portion of the common elements so designated in the Declaration or on the Plat as being reserved for the use of a certain Unit or Units to the exclusion of other Units. Any portion of the Common Elements which by the terms of this Declaration is clearly intended to serve exclusively a certain Unit or Units (but less than all of the Units) or the owner or owners thereof shall be deemed a Limited

6

1-09-1793

Common Element." Paragraph 3.02 of the Declaration further describes limited common

elements as

> "includ[ing], but not be limited to, the following: (a) any
> shutters, awnings, window boxes, doorsteps, porches, balconies,
> patios perimeter doors, windows in perimeter walls and any other
> apparatus designed to serve a single Unit including those rear yard
> areas enclosed completely by a brick wall, which is immediately
> adjacent and leads to a Unit; (b) the interior surface of the
> perimeter walls, ceilings and floors which define the boundary
> planes of a Unit; and (c) any system or component part thereof
> which serves a Unit exclusively to the extent that such system or
> component part is located outside the boundaries of a Unit."

Regarding additions, alterations or improvements to limited common elements, paragraph

4.10(a) of the Declaration indicates:

> "The Board may authorize and charge as a Common
> Expense (or in the case of Limited Common Elements may charge
> the Unit Owners benefit[t]ed thereby) additions, alterations, or
> improvements to the Common Elements. The cost of any such
> work to the [C]ommon Elements may be paid out of a special
> assessment. While the Homeowners' Association shall have the
> primary responsibility to maintain the Community Common

7

Elements, in the event of their failure to do so, the Association shall have the right to perform such maintenance and be entitled to reimbursement from the Homeowners' Association."

Finally, with respect to maintenance, repairs and replacement to limited common elements, paragraph 4.06(b)(iii) of the Declaration provides:

"All of the maintenance, repair and replacements of the Limited Common Elements benefit[t]ing his Unit, in whole or in part, except to the extent as otherwise directed by the Board or as in otherwise provided herein shall be performed by the respective Unit Owner benefit[ed] thereby. In addition, each Unit Owner shall be individually responsible for the repair, maintenance and replacement of all door and window locks and hardware with respect to which each Unit Owner is entitled to the exclusive use. At the discretion of the Board, the Board may perform, or cause to be performed, such maintenance, repairs and replacements of the Limited Common Elements and the cost thereof shall be assessed in whole or in part to Unit Owners benefit[t]ed thereby * * * ."

Turning to the case at bar, our reading of the Act and the Declaration shows no conflict between the two. The Act provides, and the Declaration indicates, that all costs for the maintenance, repair and replacement of limited common elements may be assessed to the unit owners benefitted thereby. However, per the Association, it has been the practice of the

Association to assess all unit owners equally for all repairs, maintenance and improvements to limited common areas without regard to the unit owners directly benefitted by any improvements. The Association has employed the same practice in using reserves for limited common areas. These practices are incorrect applications of the Act and the Declaration, as costs pertaining to the repair, maintenance and improvement of limited common areas should be assessed only to those unit owners directly benefitting from any such improvement. Accordingly, the trial court properly entered partial summary judgment in favor of plaintiffs on this basis.

On their cross-appeal, plaintiffs contend that the reserves are subject to the requirements in the Declaration that costs for limited common elements can only be assessed to the unit owners benefitted therefrom. We agree. However, plaintiffs also contend the Association is prohibited from using 83.3% of the existing reserve funds and up to 83.3% of future monthly assessments to pay for the repair of the James House windows or as collateral for financing the repair of the windows. We find plaintiffs' argument to be flawed and without merit.

It is undisputed that the percentage of the total monthly assessments collected on behalf of the James House unit owners is 83.3%, equal to their ownership or membership in the Association. Since part of the monthly assessment goes into the Association's reserve fund, it necessarily follows then that the James House unit owners also own 83.3% of the reserve fund. Because expenditures for limited common elements may only be assessed to those unit owners directly benefitted therefrom, it also follows that the Association may use up to 83.3% of those funds for limited common elements for the benefit of the James House unit owners. Accordingly, the trial court correctly ruled that the Association may use up to 83.3% of the reserves and future

9

monthly assessments for replacement of the James House windows in accordance with their ownership in the Association.

## CONCLUSION

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

MURPHY, P.J., and QUINN, J., concur.

| | |
|---|---|
| Please Use Following Form: | REPORTER OF DECISIONS – ILLINOIS APPELLATE COURT<br>(Front Sheet to be Attached to Each Case) |
| Complete TITLE of Case | SUZANNE RIDENOUR and DAN McNAMARA,<br><br>          Plaintiffs-Appellees and Cross-Appellants,<br><br>v.<br><br>CARL SANDBURG VILLAGE No. 7 CONDOMINIUM ASSOCIATION,<br><br>          Defendant-Appellant and Cross-Appellee<br><br>(Juliet DiIorio and Mary Guth,<br><br>          Plaintiffs). |
| Docket No.<br><br>COURT<br><br><br>Opinion Filed | No. 1-09-1793<br>Appellate Court of Illinois<br>First District, THIRD Division<br><br>May 19, 2010<br>(Give month, day and year) |
| JUSTICES | JUSTICE STEELE delivered the opinion of the court:<br><br>Murphy, P.J., and Quinn, J.,            concur |
| APPEAL from the Circuit Ct. of Cook County, Chancery Div.<br><br><br><br>For APPELLANTS, John Doe, of Chicago.<br><br>For APPELLEES, Smith and Smith of Chicago, Joseph Brown, (of | Lower Court and Trial Judge(s) in form indicated in the margin:<br>Circuit Court of Cook County, Chancery Div.<br>The Honorable    William O. Maki    , Judge Presiding. |
| | Indicate if attorney represents APPELLANTS or APPELLEES and include attorneys of counsel.  Indicate the word NONE if not represented.<br><br>Attorneys for **Plaintiffs-Appellees and Cross-Appellants:**   Katten & Temple LLP<br>542 S. Dearborn Street, Suite 1060<br>Chicago, IL 60605<br>(John M. George, Jr., Mitchell B. Katten, and Nancy A. Temple, of counsel) |
| | Attorneys for **Defendant-Appellant and Cross-Appellee:**   DLA Piper LLP (US)<br>203 N. LaSalle Street, Suite 1900<br>Chicago, IL  60601<br>(Kenneth L. Schmetterer and Daniel J. Brenner, of counsel) |