2026 IL App (1st) 250080

No. 1-25-0080

Opinion filed May 22, 2026

FIFTH DIVISION

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| SCOTT BOGOT and NANCY DOUGAN, on Behalf of Themselves and a Class of Similarly Situated Persons, | ) ) ) ) | Appeal from the Circuit Court of Cook County, Chancery Division. |
| Plaintiffs-Appellants, | ) ) | |
| | ) | No. 2023 L 001295 |
| v. | ) ) | |
| | ) | Honorable |
| THE HAVERFORD HOMEOWNERS ASSOCIATION and HANK NOTHNAGEL, CHRISTOPHER SHAW, GLENN DAVIS, and GEORGE JAMESON, as Members of the HOA Board of Directors, | ) ) ) ) ) ) | Michael T. Mullen, Judge, presiding. |
| Defendants-Appellees. | ) ) | |

PRESIDING JUSTICE MITCHELL delivered the judgment of the court, with opinion.
Justice Oden Johnson and Justice Wilson concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiffs Scott Bogot and Nancy Dougan, on behalf of themselves and a class of similarly situated persons, appeal the circuit court's dismissal of their claims against defendants Haverford Homeowners Association and Hank Nothnagel, Christopher Shaw, Glenn Davis, and George Jameson as members of the Homeowners Association Board of Directors, that defendants' assessments are unlawful and unconscionable and defendants breached their fiduciary duty by misappropriating funds. Plaintiffs also appeal the circuit court's judgment on the pleadings for

defendants on plaintiffs' claim that defendants' organizational structure does not comply with the law. At issue is (1) whether the circuit court erred in dismissing plaintiffs' claim that defendants' assessments are unlawful because the covenant for assessments does not run with the land; (2) whether the circuit court erred in dismissing plaintiffs' claim that the assessments are unconscionable because they are one-sided against condominium owners and plaintiffs were unfairly surprised by how defendants allocated assessments; (3) whether the circuit court erred in dismissing plaintiffs' breach of fiduciary duty claim because plaintiffs had standing to bring a direct claim as individuals; and (4) whether the circuit court erred in entering judgment on the pleadings for defendants because defendants' structure does not comply with the statutory regime for homeowners associations. For the following reasons, we affirm.

¶ 2                                                    I. BACKGROUND

¶ 3     The facts alleged in the complaint are as follows. Plaintiffs Scott Bogot and Nancy Dougan are condominium owners in a planned development in Glenview, Illinois, that consists of 50 detached homes, a condo building with 48 units, and community areas. Defendants Haverford Homeowners Association and the directors manage the development. The Community Declaration for Haverford was first recorded in 2005 and provided that defendants would be formed as a not-for-profit corporation under the General Not For Profit Corporation Act of 1986 (805 ILCS 105/101.01 *et seq.* (West 2004)). The declaration states it is not intended that defendants shall be a "master association" as defined in the Condominium Property Act (765 ILCS 605/18.5(a) (West 2004)) or a "common interest community association" as defined in the Code of Civil Procedure (735 ILCS 5/9-102(a)(8) (West 2004)). In 2010, after the declaration was in effect, the Illinois

General Assembly passed the Common Interest Community Association Act to regulate homeowners associations. Pub. Act. 96-1400 (eff. July 29, 2010).

¶ 4    As part of defendants' management of the development, defendants collect various assessments. Defendants assess homeowners for expenses unique to the detached homes, such as snow removal from private roads serving the homes. Additionally, defendants collect assessments from both detached homeowners and condo owners for maintenance and landscaping of the community area. Assessments for the community area are divided equally among all unit owners, whether homeowners or condo owners, and all unit owners have the right to use and enjoy the community area. Since there are 48 condos and 50 detached homes, the condo owners together pay 49% of these assessments. Plaintiffs allege that 87% of this community area is land that surrounds only the detached homes, which plaintiffs characterize as homeowner yards, while 13% of the community area is the condo building's backyard. A separate condo association collects assessments from only the condo owners for maintenance of the front yard of the condo building.

¶ 5    In 2023, plaintiffs, on behalf of themselves and a class of similarly situated persons, filed a complaint against defendants. In their first amended complaint, plaintiffs alleged that defendants cannot collect assessments for the community area because the covenant for assessments does not run with the land. Plaintiffs also alleged the assessments are unconscionable since condo owners pay 49% of the assessments to maintain the community area even though 87% of the area is functionally homeowners' yards. Additionally, plaintiffs alleged that defendants breached their fiduciary duty by misappropriating condo owners' funds for homeowners' expenses. Plaintiffs also alleged that after the passage of the Common Interest Community Association Act in 2010, defendants' organizational structure does not comply with the law. Defendants moved to dismiss

the complaint under section 2-615 of the Code of Civil Procedure. 735 ILCS 5/2-615 (West 2022). The circuit court dismissed plaintiffs' claims related to the assessments with prejudice and dismissed the breach of fiduciary duty claim without prejudice. The circuit court denied defendants' motion as to the Common Interest Community Association Act claim.

¶ 6    Plaintiffs filed a second amended complaint repleading the breach of fiduciary duty and the Common Interest Community Association Act claims. Defendants moved to dismiss plaintiffs' breach of fiduciary duty claim under section 2-619 of the Code of Civil Procedure (*id.* § 2-619(a)(9)), and the circuit court dismissed the claim for lack of standing. Defendants filed an answer to plaintiffs' claim regarding the Common Interest Community Association Act, and the parties filed cross-motions for judgment on the pleadings (*id.* § 2-615(e)). The circuit court entered judgment on the pleadings for defendants. This timely appeal followed. Ill. S. Ct. R. 303 (eff. July 1, 2017).

¶ 7                                    II. ANALYSIS

¶ 8                                 A. Runs with the Land

¶ 9    Plaintiffs argue that the circuit court erred in dismissing their claim that defendants have no legal right to collect assessments from condo owners for maintenance of the community area because the covenant for assessments does not run with the land. Specifically, plaintiffs argue that the covenant to pay assessments for the community area does not touch and concern the land since the condo owners are unable to use and enjoy portions of the community area. Defendants contend that the covenant does touch and concern the land, specifically the land's landscaping and other maintenance. Defendants further contend that plaintiffs have the right to use and enjoy all the community area. We review the dismissal of a claim *de novo*. *Cowper v. Nyberg*, 2015 IL 117811,

¶ 12.

¶ 10    A covenant is enforceable and binding on subsequent owners if it runs with the land. *Streams Sports Club, Ltd. v. Richmond*, 99 Ill. 2d 182, 187-88 (1983). "[F]or a covenant to run with the land three criteria must be satisfied: (1) the grantor and grantee must have intended that the covenant run with the land; (2) the covenant must touch and concern the land; and (3) there must be privity of estate between the party claiming the benefit of the covenant and the party resting under its burden." *St. Paul Federal Bank for Savings v. Wesby*, 149 Ill. App. 3d 1059, 1063 (1986) (citing *Streams Sports Club*, 99 Ill. 2d at 188). The parties dispute only whether the covenant touches and concerns the land.

¶ 11    A covenant touches and concerns the land if it "affects the use, value, and enjoyment *** of the property." (Internal quotation marks omitted.) *In re County Treasurer and ex Officio County Collector*, 373 Ill. App. 3d 679, 690 (2007). Generally, assessments "for repair of common areas *** clearly further[ ] the use and enjoyment of the property." *St. Paul Federal Bank for Savings*, 149 Ill. App. 3d at 1064.

¶ 12    The complaint alleges that "[u]nder the terms of the Declaration, each Condo Owner and Homeowner is annually assessed an equal amount for the expenses to *** maintain, repair, and replace landscaping of the common areas ***." The covenant to pay assessments for the community area is for the maintenance, repair, and landscaping of that common land, so it affects the use and enjoyment of the land. Thus, taking the allegations as true, the covenant to pay assessments for maintenance of the community area touches and concerns the land. See *Vernon v. Schuster*, 179 Ill. 2d 338, 341 (1997) ("In determining whether to allow a motion to dismiss, a court must take as true all well-pled allegations of fact contained in the complaint ***.").

¶ 13    Plaintiffs argue that the covenant does not touch and concern the land because they do not actually use and enjoy portions of the community area adjacent to the homes which they describe as "Homeowners' yards." They argue "one cannot use and enjoy another person's yard" and no "reasonable person [would] feel comfortable 'using and enjoying' a stranger's yard." However, the touch and concern "requirement concerns the covenant's relationship to *the land*." (Emphasis in original.) *In re County Treasurer*, 373 Ill. App. 3d at 690. In other words, the question is whether the covenant affects the use, value, and enjoyment of the land, not whether plaintiffs in fact choose to use the land. The covenant for assessments affects the use, value, and enjoyment of the community land by requiring payment for the land's upkeep. The declaration gives plaintiffs the right to use and enjoy this land, whether or not they choose to exercise it. See *Streams Sports Club*, 99 Ill. 2d at 190 ("It does not matter that the facilities are not adjacent to each lot, it is sufficient that they touch and concern the entire subdivision." (quoting *Four Seasons Homeowners Association, Inc. v. Sellers*, 62 N.C. App. 205, 210-11 (1983))).

¶ 14    Plaintiffs also argue that the assessments are excessive compared to the benefit to the condo owners, so the covenant fails the touch and concern test under *Streams Sports Club*, 99 Ill. 2d at 188-90. Plaintiffs, however, rely on language that was not part of the court's "touch and concern" analysis. In that case, the court held that a covenant for assessments to pay for a recreational facility adjacent to the condo building ran with the land "because the covenant clearly touches and concerns the land." *Id.* at 189-91. It noted that nearly every other jurisdiction agreed and addressed the defendant's attempt to distinguish authority from other jurisdictions:

> "Defendant has attempted to distinguish such authority on the grounds that the associations that levy assessments for recreational facilities were nonprofit entities. Defendant has provided no authority indicating recreational facilities that earn a profit should be treated differently than nonprofit associations. Finally, defendant has not alleged that the

assessments have been excessive or that the facilities have not been commensurate with the annual fees." *Id.* at 189-90.

The court mentioned the excessiveness of the assessments in response to the argument that for-profit entities should be distinguished from nonprofit entities. *Id.* Here, defendants are a not-for-profit corporation, so the court's discussion is immaterial anyway. The covenant to pay assessments runs with the land, so the circuit court did not err in dismissing plaintiffs' claim that defendants' assessments were unlawful.

¶ 15                                B. Unconscionability

¶ 16    Plaintiffs argue that the circuit court erred in dismissing their claim that the declaration's allocation of assessments for maintenance of the community area is unconscionable. Plaintiffs argue that the allocations are one-sided against the condo owners who pay 49% of the maintenance for the community area even though 87% of the community area is functionally homeowner yards. Additionally, plaintiffs argue that they were unfairly surprised by the declaration because they lacked the specialized knowledge to recognize that the declaration's allocation of assessments, which is equal among all unit owners, varies from other associations who allocate assessments by square footage. Defendants argue that the location of the community area is irrelevant because all units have an equal right to use and enjoy the area. Further, defendants argue that the declaration's allocation of assessments is reasonable because it divides assessments equally among all units. We review the dismissal of a claim *de novo*. *Cowper*, 2015 IL 117811, ¶ 12.

¶ 17    "Unconscionability takes two general forms; an agreement may be unenforceable if it is either procedurally or substantively unconscionable." *Phoenix Insurance Co. v. Rosen*, 242 Ill. 2d 48, 60 (2011). "Procedural unconscionability consists of some impropriety during the process of forming the contract depriving a party of meaningful choice." (Internal quotation marks omitted.)

*Id.* Procedural unconscionability considers the circumstances surrounding the transaction including "the disparity of bargaining power between the drafter of the contract and the party claiming unconscionability." *Kinkel v. Cingular Wireless LLC*, 223 Ill. 2d 1, 22-23 (2006). Other relevant factors include "the manner in which the contract was entered into, whether each party had a reasonable opportunity to understand the terms of the contract, and whether important terms were hidden in a maze of fine print." (Internal quotation marks omitted.) *Id.* at 23.

¶ 18    Substantive unconscionability, on the other hand, "concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." (Internal quotation marks omitted.) *Id.* at 28. "Indicative of substantive unconscionability are contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity." (Internal quotation marks omitted.) *Id.*

¶ 19    Defendants first argue that plaintiffs waived their argument that the declaration is procedurally unconscionable because they did not allege it in the first amended complaint at issue here, nor in their reply to defendants' motion to dismiss, so cannot resurrect it on appeal. However, a "finding of unconscionability may be based on either procedural or substantive unconscionability, or a combination of both." *Id.* at 21. Even when the circumstances surrounding the transaction are not severe enough to render a contract procedurally unconscionable on its own, those factors should still be considered in combination with substantive unconscionability to determine whether a contract is unconscionable. See *id.* at 27. Here, although the claim in plaintiffs' first amended complaint is labeled "The Declaration is Substantively Unconscionable," the section contains factual allegations that concern procedural unconscionability. As such, we will consider all the allegations in plaintiffs' complaint concerning unconscionability.

¶ 20    Plaintiffs first allege that the "Condo Owners had no ability to negotiate the Declaration's terms and were forced to accept the Declaration when they purchased their Condo Units." But contracts of adhesion "are a fact of modern life" and are not, on their own, procedurally unconscionable. *Id.* at 26; *Phoenix Insurance Co.*, 242 Ill. 2d at 72-73. Next, plaintiffs allege that the "Condo Owners did not possess the knowledge or sophisticated understanding of real estate and community association law to recognize the unusual and highly inequitable manner in which assessments were calculated under the Declaration." However, the declaration is clear that assessments "shall be equal to the Community Assessment, divided by the number of Dwelling Units as shown on the Declarant's Development Plan, so that each Owner shall pay equal Community Assessments for each Dwelling Unit owned." Additionally, although plaintiffs claim this manner of division is unusual compared to how other associations divide their assessments (by square footage), plaintiffs do not allege any circumstances surrounding the transaction that prevented them from learning this before they purchased their condos.

¶ 21    Plaintiffs also allege that the HOA declaration itself is "oppressive, totally one-sided and creates a significant cost-price disparity in favor of the Homeowners and to the detriment of the Condo Owners" "due to the manner in which it calculates and apportions assessments." However, plaintiffs have not established that the declaration's terms itself are so one-sided as to be unconscionable, rather than just a bad deal. According to the complaint, condo owners pay an assessment to their own condo association for 100% of the maintenance of the condo's front yard and additionally pay an assessment to defendants for maintenance of the community area for the entire development. They allege the condo owners pay a disproportionate 49% share of the maintenance when only 13% of the community area surrounds the condo building and requires

less landscaping. They allege they pay significantly more in assessments than they would if the community area assessments were allocated as other associations do, by square footage, and if the community area included the condo's front yard ($79,000 compared to $21,000). However, the declaration is clear that each unit owner has an equal right to use and enjoy the community area. By its terms, equal payment from each unit is not unconscionable. See *Carl Sandburg Village Condominium Ass'n No. 1 v. Carl Sandburg Village Condominium Homeowners' Ass'n*, 175 Ill. App. 3d 1, 7 (1987) ("Since all residents are entitled to use of the facilities, it seems reasonable that all residents, as represented by the HOA, should have the corollary responsibility to maintain them."). While this arrangement may be less favorable for plaintiffs than if they lived in a development that allocated assessments by square footage, the fact that a better deal exists, or may be common, does not make this arrangement so unconscionable as to be unenforceable. See *Kinkel*, 223 Ill. 2d at 28 (acknowledging that the commercial reasonableness of a contract's terms can be a factor for unconscionability in transactions between two commercial entities but noting that it is of "limited usefulness" otherwise).

¶ 22    Plaintiffs also argue that the declaration is unconscionable because community association members cannot be assessed for an expense from which they derive no benefit. However, none of the three cases that plaintiffs cite for this proposition support this as a general contention. See *Ridenour v. Carl Sandburg Village No. 7 Condominium Ass'n*, 402 Ill. App. 3d 532, 537 (2010); *Hofmeyer v. Willow Shores Condominium Ass'n*, 309 Ill. App. 3d 380, 384 (1999); *Sawko v. Dominion Plaza One Condominium Ass'n No. 1-A*, 218 Ill. App. 3d 521, 532 (1991). In all three cases, the court considered the protections outlined in the associations' *own* declarations on how fees could be assessed. *Ridenour*, 402 Ill. App. 3d at 536-37 (explaining that the declaration

designated some community areas as limited common elements and specified that only those who benefited from them could be charged); *Hofmeyer*, 309 Ill. App. 3d at 382 (same); *Sawko*, 218 Ill. App. 3d at 532 (explaining that the declaration outlined two categories of assessments, one paid by percentage of ownership and the other paid equally among all units, and the association could not vary from those formulas). Here, there is no allegation that defendants are assessing fees contrary to the declaration. Even accepting plaintiffs' contention that it would be *per se* unconscionable to assess them for an expense they do not benefit from, plaintiffs do derive a benefit because they have the right to use and enjoy the community area. Plaintiffs did not state a claim for unconscionability, so the circuit court did not err in dismissing the claim.

¶ 23                    C. Breach of Fiduciary Duty - Standing

¶ 24    Plaintiffs argue that the circuit court erred in dismissing their claim of breach of fiduciary duty for lack of standing. Plaintiffs argue that they stated a direct claim against defendants because they properly alleged a separate and distinct injury as condo owners. Defendants contend that plaintiffs do not have standing since they sued in an individual capacity rather than bringing a derivative claim. We review the circuit court's dismissal of a claim for lack of standing *de novo*. *Glisson v. City of Marion*, 188 Ill. 2d 211, 221 (1999).

¶ 25    In a derivative action, a shareholder brings an action "on behalf of a corporation to seek relief for injuries done to that corporation." *Davis v. Dyson*, 387 Ill. App. 3d 676, 682 (2008). In a direct claim, on the other hand, a shareholder "who has a direct and personal interest in a cause of action *** bring[s] suit in an individual capacity even if the corporation's rights are also implicated." *Id.* at 689. Misappropriation of corporate funds is an injury incurred by the corporation so must be brought in a derivative action, rather than as a direct claim by individuals.

*Borgsmiller v. Burroughs*, 187 Ill. App. 3d 1, 7 (1989); see *Poulet v. H.F.O., L.L.C.*, 353 Ill. App. 3d 82, 99-100 (2004) (explaining that individual unit owners lacked standing to bring individual claims against their condo association for misuse of association funds).

¶ 26    Here, plaintiffs allege defendants breached their fiduciary duties by misusing common assessments and common reserve funds to pay for homeowner expenses and to account for a deficit in homeowner assessments. All of plaintiffs' allegations concern misappropriation of the association's funds. As such, these claims must be brought in a derivative action. Since plaintiffs sued as individuals and brought a direct claim rather than a derivative action, plaintiffs do not have standing.

¶ 27    Plaintiffs argue that even though their claim is for misappropriation of the association's funds, they have standing to bring a direct claim since they suffered an injury that is separate and distinct from the injury to the association. See *Davis*, 387 Ill. App. 3d at 690 ("[F]or a shareholder to have standing to bring an individual claim, the shareholder must allege an injury that is separate and distinct from that suffered by other shareholders ***." (Internal quotation marks omitted.)). Plaintiffs argue they have a separate and distinct injury as condo owners because the association's funds were misappropriated to the detriment of the condo owners and to the benefit of the homeowners. Even so, this would not change the fact that the alleged misappropriated funds belonged to the association, so the association suffered the injury. See *Poulet*, 353 Ill. App. 3d at 99-100 ("We further disagree with plaintiffs' argument *** that the funds in the Association's account were not owned by the Association but, rather, were proportionately owned and contributed by each individual unit owner, [and] conferred to [plaintiff] an individual interest sufficient to provide him with the necessary standing to pursue those claims. *** [T]he collective

character of the claims at issue here – both involving Association funds – show that the rights were those only the Association had the authority to assert."). Further, plaintiffs' allegations that the condo owners supplied the funds that were misappropriated are allegations of indirect harm based on a primary wrong to the association. See *Small v. Sussman*, 306 Ill. App. 3d 639, 644 (1999) (explaining that diversion or mismanagement of corporate assets represents a direct wrong to the corporation and "would affect all shareholders only indirectly"). With allegations of only indirect harm to plaintiffs, plaintiffs have no standing to sue individually. See *Goldberg v. Michael*, 328 Ill. App. 3d 593, 599 (2002). The circuit court did not err in dismissing plaintiffs' breach of fiduciary duty claim.

¶ 28                                D. Common Interest Community Association Act

¶ 29    Plaintiffs argue that the circuit court erred in entering judgment on the pleadings for defendants on plaintiffs' claim that after the enactment of the Common Interest Community Association Act (765 ILCS 160/1-1 *et seq.* (West 2022)), defendants are no longer organized in compliance with the law. Plaintiffs argue that the Common Interest Community Association Act prohibits associations that include both condos and detached homes unless they are organized as master associations under the Condominium Property Act (765 ILCS 605/1 *et seq.* (West 2022)). Plaintiffs argue that defendants are not a master association, so equitable principles mandate that plaintiffs be severed from defendants. Defendants argue that they are not governed by the Common Interest Community Association Act, the Act does not prohibit defendants from being organized solely under the General Not For Profit Corporation Act of 1986 (805 ILCS 105/101.01 *et seq.* (West 2022)), and the Common Interest Community Association Act does not require that condos are separated from housing associations.

¶ 30   The parties agree it was proper for the circuit court to rule on the pleadings but dispute the correct judgment as a matter of law. See *State Building Venture v. O'Donnell*, 239 Ill. 2d 151, 157-58 (2010) ("A trial court properly grants a judgment on the pleadings when the pleadings disclose no genuine issue of material fact and the movant is entitled to judgment as a matter of law."). We review the circuit court's judgment on the pleadings *de novo*. *H&M Commercial Driver Leasing, Inc. v. Fox Valley Containers, Inc.*, 209 Ill. 2d 52, 57 (2004). Further, questions of statutory interpretation are reviewed *de novo*. *Accettura v. Vacationland, Inc.*, 2019 IL 124285, ¶ 11. "The primary objective of our analysis is to ascertain and give effect to the legislative intent." *Id.* The most reliable indicator of legislative intent is the plain language of the statute. *Id.* Where a statute is ambiguous, "a statute's legislative history and debates are valuable construction aids." (Internal quotation marks omitted.) *Krohe v. City of Bloomington*, 204 Ill. 2d 392, 397-98 (2003).

¶ 31   In 1963, the Illinois General Assembly passed the Condominium Property Act to regulate condominiums. 1963 Ill. Laws 1120 (§ 2.1). Under the Act, condominium associations administer the property, 765 ILCS 605/18.3 (West 2022), which includes assessing condo owners for common expenses, *id.* § 9(a). The Act explains that when another nonprofit corporation or association exercises power on behalf of one or more condominiums, or for the benefit of condo owners, that corporation or association is considered a master association:

> "If the declaration, other condominium instrument, or other duly recorded covenants provide that any of the powers of the unit owners associations are to be exercised by or may be delegated to a nonprofit corporation or unincorporated association that exercises those or other powers on behalf of one or more condominiums, or for the benefit of the unit owners of one or more condominiums, such corporation or association shall be a master association." *Id.* § 18.5(a).

Master associations are regulated by the Condominium Property Act. *Id.* § 18.5.

¶ 32    In 2010, the Illinois General Assembly passed the Common Interest Community Association Act (Pub. Act. 96-1400 (eff. July 29, 2010)) to "afford[ ] similar protections to owners of single-family, townhome, villa, or other properties in common interest communities that are currently afforded to condominium property owners." 96th Ill. Gen. Assem., Senate Proceedings, March 17, 2010, at 53 (statements of Senator Wilhelmi). The Act applies "to all common interest community associations in this State." 765 ILCS 160/1-10. "Common interest community" is defined as "real estate other than a condominium or cooperative with respect to which any person by virtue of his or her ownership of a partial interest or a unit therein is obligated to pay for the maintenance, improvement, insurance premiums or real estate taxes of common areas described in a declaration which is administered by an association." *Id.* § 1-5. Further, a " 'common interest community' may include, but not be limited to, an attached or detached townhome, villa, or single-family home." *Id.* However, "[a] 'common interest community' does not include a master association." *Id.*

¶ 33    Before ruling on the cross-motions for judgment on the pleadings, the circuit court suggested that the parties submit certified questions to this court on the various statutory interpretation issues (Ill. S. Ct. R. 308 (eff. Oct. 1, 2019)):

> "Before I hear any argument, and I will hear argument on the case, it seems to me based on the parties' position, based upon the interpretation of the relevant statutes that it may be helpful if the parties consider requesting certification of one, if not three separate issues that would be certified for review pursuant to Rule 308.
>
> So the idea of a 308 certification, which I would welcome, is to obtain clarification of certain issues. *** [O]ne question would be if a homeowners association was founded prior to CICA – C-I-C-A, that's an acronym, would it be subject to the provisions of CICA. Some question similar to that might be helpful.
>
> Second, is CICA applicable to homeowners associations that were formed under the Illinois Not-for-Profit Act prior to CICA coming into existence. Third, does CICA

require conversion to a common-interest community association or pre-existing associations that failed to fully comply with the provisions of the act."

The parties informed the circuit court that they did not want to certify the questions to this court and, instead, asked the circuit court to rule. The circuit court entered judgment on the pleadings for defendants explaining that, under its interpretation, the Common Interest Community Association Act did not require the condos to be separated from defendants' housing organization:

"So the question is: Do CICAA's provisions apply to associations that contain both condominiums and detached homes whose declaration was created and filed prior to CICAA's enactment? Separately, can a property that contains both condominium buildings and detached housing be considered a community interest community under CICAA? I have reviewed the case law that has been cited to the parties and we have had a discussion about this. And this may well be an issue of first impression. But, nonetheless, my conclusions after a careful review of the legislation as well as the legislative history is as follows: CICAA does not prohibit Haverford's structure as an association organized under the Not For Profit Act. Further, CICAA does not require a separation of the condominiums from the housing organization. *** Judgment is entered on the defendants' motion for judgment on the pleadings as it pertains to count one."

¶ 34 We agree with the circuit court that the Common Interest Community Association Act does not require condos to be separated from organizations that contain both condos and homes. The Common Interest Community Association Act was intended to apply to all homeowners associations not already regulated by the Condominium Property Act, either as a condo or master association. See 96th Ill. Gen. Assem., House Proceedings, May 6, 2010, at 78 (statements of Representative Schmitz) ("Senate Bill 3180 puts in the statute the Common Interest Community Homeowners Association Act, which will basically allow homeowners associations that we have in the smaller subdivisions and townhome communities, somewhat in line with the condo owners that they have today."); 765 ILCS 160/1-5 (" 'Common interest community' means real estate other than a condominium ***. *** A 'common interest community' does not include a master association."). Further, the Act gave all associations time to come into compliance after its passage,

indicating the Act was intended to apply to all existing homeowners associations not covered by the Condominium Property Act. See *id.* § 1-80 ("A common interest community association shall be in full compliance with the provisions of this Act no later than January 1, 2012.").

¶ 35 Thus, the Common Interest Community Association Act was intended to create a comprehensive regulatory scheme, in combination with the Condominium Property Act, that applies to all homeowners associations. Under this statutory scheme, an association is either a condo or master association governed by the Condominium Property Act and excluded from the Common Interest Community Association Act, or the association is neither a condominium nor a master association and is governed by the Common Interest Community Association Act (unless it is exempted as a small community, *id.* § 1-75). Whether an association is governed by the Condominium Property Act or the Common Interest Community Association Act, the association can choose to incorporate as an Illinois not-for-profit corporation. 765 ILCS 605/18.1(a) ("The owner or owners of the property, or the board of managers, may cause to be incorporated a not-for-profit corporation under the General Not For Profit Corporation Act of the State of Illinois for the purpose of facilitating the administration and operation of the property."); 765 ILCS 160/1-5 (" 'Board of directors' means, for a common interest community that has been incorporated as an Illinois not-for-profit corporation, the group of people elected by the members of a common interest community as the governing body ***. 'Board of managers' means, for a common interest community that is an unincorporated association or organized as a limited liability company, the group of people elected by the members of a common interest community as the governing body ***."). An association's status as a not-for-profit corporation does not exclude them from either statute. Rather, it is contemplated by both.

¶ 36 Nothing in the statutory scheme suggests condos and homes cannot be managed by the same association. Rather, these associations are master associations which exercise power for the benefit of condo owners, in addition to managing homes, and are governed by the Condominium Property Act. 765 ILCS 605/18.5(a) ("If the *** duly recorded covenants provide that any of the powers of the [condo] associations are to be exercised by or may be delegated to a nonprofit corporation or unincorporated association that exercises those or other powers on behalf of one or more condominiums, or for the benefit of the unit owners of one or more condominiums, such corporation or association shall be a master association."). Here, the declaration provides that defendants assess condo owners for maintenance of the community area, including the backyard of the condo building, to the benefit of the condo owners. This falls under the plain language of "master association" under the Condominium Property Act (*id.* § 18.5(a)).

¶ 37 Plaintiffs argue that because defendants are not organized as a master association, the condo owners must be severed from defendants' organization so that the organization can fall under the Common Interest Community Association Act. Plaintiffs rely on the declaration which states "[n]othing in this Community Declaration shall be construed as delegating to the Community Association, or authorizing the Community Association to exercise, any rights or powers on behalf of any such condominium association" and it "is not intended that the Community Association shall be a 'master association.' " But the declaration's own characterization that defendants are not a master association is immaterial. See *id.* § 4.1(b) ("[T]he declaration prevails except to the extent the declaration is inconsistent with this [Condominium Property] Act."); *Enterprise Leasing Co. of St. Louis v. Hardin*, 2011 IL App (5th) 100201, ¶ 22 ("We must interpret a contract to be

consistent with the law and public policy of this state."). Thus, defendants are a master association and fall under the Condominium Property Act.

¶ 38    The circuit court did not err in concluding that the condos need not be severed from defendants' organization. Therefore, the circuit court did not err in entering judgment on the pleadings for defendants.

¶ 39                                  III. CONCLUSION

¶ 40    The judgment of the circuit court of Cook County is affirmed.

¶ 41    Affirmed.

***Bogot v. Haverford Homeowners Association***, **2026 IL App (1st) 250080**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2023 L 001295; the Hon. Michael T. Mullen, Judge, presiding. |
| **Attorneys for Appellants:** | Stephen J. Coukos, of Coukos Law, for appellants. |
| **Attorneys for Appellees:** | Rebecca M. Rothmann and Abigail K. Dibadj, of Wilson Elser Moskowitz Edelman & Dicker LLP, for appellees. |